UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SNOW INGREDIENTS, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1412** |
| **SNOWIZARD, INC., ET AL.** | **SECTION: "G" (1)** |

## ORDER AND REASONS

Before the Court is Defendants' Third Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11[1] filed by Defendants SnoWizard, Inc., Ronald R. Sciortino, Jack E. Morris, and Kenneth L. Tolar (collectively, "Defendants"), who pursuant to Rule 11 of the Federal Rules of Civil Procedure move for costs against Mark Andrews, counsel of record for Plaintiffs Snow Ingredients, Inc., Simeon, Inc., Southern Snow Mfg. Co., Inc., Parasol Flavors, LLC, Raggs Supply, LP, and Special T Ice Co., Inc. in the above-captioned matter. Defendants contend that Andrews has presented to this Court a pleading (Rec. Doc. 53, "Second Amended Complaint") setting forth a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") that is not warranted by existing law or by any nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law. Defendants also argue that Andrews filed the Second Amended Complaint for improper purposes. The Court has considered the Second Amended Complaint, the parties' respective briefs, the record, and the applicable law. For the reasons set forth below, the Court will deny the motion.

---

[1] Rec. Doc. 66.

1

## I.  Background

*A. Procedural Background*

Plaintiff filed this action against Defendants in the Eastern District of Louisiana on June 1, 2012, and it was transferred to this section, Section G, because it is related to cases already pending in this Court in consolidated Civil Action No. 06-9170.[2] In that case, Defendants answered the complaint on July 19, 2012.[3] The next day, Plaintiffs filed an Amended Complaint.[4] On August 22, 2012, Defendants filed a motion, Second Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11.[5] Because Civil Action No. 06-9170 was pending, the Court denied Defendants' Second Motion for Sanctions without prejudice to be reurged if necessary after the completion of trial in Civil Action No. 06-9170. With leave of Court, Plaintiffs filed a Second Amended and Supplemented Complaint ("Second Amended Complaint") on February 4, 2013.[6]  On March 12, 2013, Defendants filed a Motion to Dismiss Second Amended Complaint under Rule 12(b)(6).[7] Plaintiffs filed an opposition to that motion on April 2, 2013.[8] On June 21, 2013, Defendants filed the instant motion, entitled Third Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11.[9] Several days later, on June 26,

---

[2] *See* Rec. Docs. 1, 8.

[3] Rec. Doc. 11.

[4] Rec. Doc. 12.

[5] Rec. Doc. 21. The first motion for sanctions arose in the context of Case No. 06-9170. *See* Case No. 06-9170 at Rec. Doc. 410.

[6] Rec. Doc. 53.

[7] Rec. Doc. 62.

[8] Rec. Doc. 64.

[9] Rec. Doc. 66.

2013, Defendants refiled their Second Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11.[10]

## B. Factual Background

Although the above-captioned case was not consolidated with Civil Actions Nos. 06-9170, 09-3394, 10791, and 11-1499 (the "Consolidated Cases"), the factual background of this case is deeply intertwined with the Consolidated Cases. All parties, except for the attorney-defendants, Jack Morris and Kenneth Tolar, are involved in the sale, distribution, or manufacturer of snowballs, snowball flavor concentrates, and ice-shaving machines.

Between 2003 and 2008, SnoWizard began to acquire and enforce various patent and trademark rights, and this litigation ensued when Southern Snow first filed suit in 2006. In the consolidated cases, the claims and counterclaims predominantly covered the scope, existence, and ownership of certain patents and trademarks and the fairness of the parties' business practices. Throughout the litigation, Plaintiffs have claimed that Defendants have fraudulently and unfairly procured and enforced their claimed intellectual property rights. After significant motion practice over the course of multiple years, the remaining claims were submitted to a jury in an eight-day trial. On February 28, 2013, the jury returned a verdict, and the Court entered a judgment on the basis of the jury verdict on March 5, 2013.[11]

According to the Second Amended Complaint in this case, "Defendant SnoWizard is attempting to manipulate the snowball market through a scheme to assert exclusive monopoly rights to sell products in that market, threatening and bringing litigation to force withdrawal of legitimate products and producers from the market based on fraudulently asserted and obtained

---

[10] Rec. Doc. 67.

[11] Civ. Action No. 06-9170, Rec. Doc. 665.

patent and trademark rights."[12]  Plaintiffs claim that SnoWizard's attorneys Kenneth Tolar and Jack Morris have conspired with SnoWizard and Sciortino to acquire, maintain, and enforce bogus patents and trademark registrations as a means of asserting unwarranted monopoly rights, through abusive litigation and obstruction of justice.[13]

In particular, Plaintiffs allege the following:

In what Plaintiffs identify in their Second Amended Complaint as "Count 1," they allege that SnoWizard, Sciortino, Tolar, and Morris engaged in a litigation scheme that constitutes obstruction of justice and a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*[14]

In "Count 2" and "Count 6," Plaintiffs allege that SnoWizard has engaged in sham litigation against Plaintiffs and made material misstatements in court and to the United States Patent and Trademark Office ("USPTO") in a manner that violates both federal and state antitrust laws.[15]

In "Counts 3–4," Plaintiffs accuse SnoWizard of violating the Lanham Act for their allegedly fraudulent trademark registration of WHITE CHOCOLATE & CHIPS and CAJUN RED HOT.[16]

In "Count 5," Plaintiffs raise another Lanham Act claim wherein they allege unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[17]

---

[12] Rec. Doc. 53 at ¶ 14.

[13] *Id.* at ¶ 14.

[14] *Id.* at ¶¶ 312–19.

[15] *Id.* at ¶¶ 320–33, 347–51.

[16] *Id.* at ¶¶ 334–41.

[17] *Id.* at ¶¶ 342–44.

In "Count 7," Plaintiffs allege that SnoWizard has engaged in conduct that violates the Louisiana Unfair Trade Practices Act ('LUTPA"), Louisiana Revised Statute § 51:1401, *et seq.*[18]

In "Count 8" and "Count 11," Plaintiffs claim that, pursuant to Louisiana Civil Code Article 2315, SnoWizard must pay damages for fraud, obstruction of justice, and abusive litigation, and that Morris and Tolar conspired to commit those acts and are thus liable under Louisiana Civil Code Article 2324.[19]

In "Count 9," Plaintiffs accuse SnoWizard of malicious prosecution for pursuit of its claims in *Southern Snow Manufacturing Company, Inc. v. SnoWizard, Inc.*, Case No. 10-4275.[20]

In "Count 10," Plaintiffs raise a similar claim for SnoWizard's role in *SnoWizard, Inc. v. Doty, et al.*, Case No. 11-0515.[21]

Finally, in "Counts 10–13," Plaintiffs allege that Defendants Morris and Tolar are liable as conspirators for SnoWizard's alleged wrongdoing as set forth in "Counts" 1–9.[22]

Defendants seek sanctions for "Count 1"—the RICO cause of action—alleging that the claim was frivolous "insofar as no reasonable attorney would believe that the alleged acts of defendants sued upon were capable of satisfying the criminal act predicate requirement of RICO."[23] Defendant also seeks sanctions because "the allegations, purported RICO claim, and other purported counts therein are being presented to harass and retaliate against defendants, to

---

[18] *Id.* at ¶¶ 352–54.

[19] *Id.* at ¶¶ 355–56, 361–62.

[20] *Id.* at ¶ 358.

[21] *Id.* at ¶ 360.

[22] *Id.* at ¶¶ 361–66.

[23] Rec. Doc. 66 at 1–2.

5

cause unnecessary delay in this and other pending litigation involving plaintiffs and defendants, and to needlessly increase the cost to defendants of this and other pending litigation."[24]

## II. Parties' Arguments

*A. Defendants' Arguments in Support of Sanctions*

### *1. Plaintiffs' RICO Claims Merit Sanctions Because There was No Predicate Act*

Defendants argue that Plaintiffs' RICO claims here are "not warranted by existing law or by any nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[25] Defendants assert that "Andrews has not alleged—and no reasonable attorney would believe [the Second Amended Complaint] alleges—any *predicate criminal acts.*"[26] On this basis, Defendants conclude that "Andrews' [sic] RICO claims and legal contentions manifestly—*i.e.*, as a matter of law under an objective, not subjective standard of reasonableness under the circumstances—are not warranted."[27]

Based on several district court cases from outside the Fifth Circuit, Defendants argue that the alleged "Litigation Scheme" that Plaintiffs accuse SnoWizard of perpetrating is not actionable under RICO because "[t]his case does not involve 'bribery of a witness' . . . or 'additional allegations of extortion or some other pattern of racketeering activity.'"[28] Defendants contend that "if the type of alleged conduct Andrews complains of could be the basis of a RICO claim, then virtually every attorney would owe a duty to his or her clients to name virtually every

---

[24] *Id.* at 2.

[25] Rec. Doc. 66 at 1.

[26] Rec. Doc. 66-1 at 12.

[27] *Id.* (internal citations and quotations omitted).

[28] *Id.* at 14 (citations omitted).

opposing party and attorney involved in virtually any contentious litigation . . . as defendants in RICO suits."[29]

### *2. Andrews Filed the Second Amended Complaint for Improper Purposes*

Defendants further argue that "objective evidence also establishes that Andrews" brought the Second Amended Complaint for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[30] Defendants maintain that "the record evidence establishes that Andrews filed the [Second Amended Complaint] . . . in order to harass and retaliate against [Defendants], to cause unnecessary delay in this and other pending so-called 'collateral litigation,' and to needlessly increase the cost to SnoWizard of this and the other pending litigation."[31]

Specifically, Defendants speculate that Andrews is "retaliating against SnoWizard" the same way Andrews did by filing a lawsuit against in it Civil Action 10-791 "a week after Judge Lemmon gutted [Plaintiffs'] claims in Civil Action 09-3394 . . . and just as Andrews retaliated against SnoWizard by filing the frivolous and duplicative first RICO complaint in Civil Action 11-1499 soon after Judge Zainey dismissed the vast majority of [Plaintiffs'] remaining claims . . . and just as Andrews retaliated . . . by filing the frivolous and duplicative second RICO complaint in this Civil Action 12-1412 soon after SnoWizard filed the defamation suit against him in state court . . . ."[32] Defendants allege that "Andrews has now retaliated against [Defendants] by filing his frivolous [Second Amended Complaint] herein, and his frivolous RICO counterclaim in Civil Action 12-2796, soon after the jury rendered its verdict in favor of SnoWizard and against

---

[29] *Id.* at 15.
[30] *Id.* at 16 (quoting Fed. R. Civ. P. 11(b)(1)).
[31] *Id.* at 16.
[32] *Id.*

7

Andrews' clients in consolidated Civil Action 06-9170."[33] Defendants conclude that "[Andrews] filed [the complaints] anyway because that is how he routinely exacts revenge against [Defendants] whenever they prevail against his malicious and costly, but frivolous and ineffectual, bullying tactics."[34] According to Defendants, "[R]etaliation, harassment, unnecessary delay, and increased cost are the only possible motives for the filing of the frivolous and quadruplicate RICO counterclaims in this case . . . ."[35]

### B. Andrews's Arguments in Opposition

Andrews argues that "SnoWizard's [two] repeated motions for sanctions cannot overcome" the fact that Magistrate Judge Shushan found "the Defendants' assertions that the [Second Amended Complaint] was 'futile' to be non-meritorious."[36] Andrews continues that, "[t]he Magistrate Judge's decision only informs, but does not control, this District Court but nevertheless a magistrate judge of this court has found the [Second Amended Complaint] to be adequately supported by fact and law to survive under the Rule-12 standard."[37]

Andrews claims that the Second Amended Complaint cites "the page numbers, paragraph numbers, and line numbers where SnoWizard's and SnoWizard's attorneys material misrepresentations can be found *in the records* of the adjudicatory proceedings that were obstructed."[38] Based on this, Andrews argues that "Plaintiffs' motivation is to vindicate the rights that were violated every time that SnoWizard and its attorneys made material

---

[33] *Id.* at 16–17.

[34] *Id.* at 17.

[35] *Id.* at 18

[36] Rec. Doc. 68 at 1 (citing Rec. Doc. 52 at 2 (granting leave to file amended complaint)).

[37] *Id.*

[38] *Id.* at 2.

8

misrepresentations in adjudicatory proceedings in this Court and before the USPTO administrative agency."[39] Andrews also points out that "the filing of the [current] lawsuit has caused no delay in the other, earlier lawsuits, which have already proceeded to trial . . . ."[40]

As for the RICO claim, Andrews argues that "SnoWizard misleadingly cites and misleadingly quotes the *Feld* district-court case,"[41] one of the cases Defendants had cited to in their motion for sanctions.[42] Andrews quotes a portion of *Feld* omitted by Defendants, in which the court states, "[W]here additional allegations of extortion or some other pattern of racketeering activity' are involved, courts have found that alleged mail and wire fraud arising out of malicious prosecution or abuse of process could be Rico predicate acts."[43] Andrews quotes from another portion of *Feld* as well: "Although obstruction of justice charges are not often applied to lies or misrepresentations in the course of civil discovery, courts have permitted parties to pursue it under certain circumstances."[44] Finally, Andrews notes that "SnoWizard is unable to cite any controlling precedent on this issue" of whether material misrepresentations in adjudicatory proceedings in courts and administrative agencies can serve as predicate acts for a RICO suit.[45]

---

[39] *Id.*

[40] *Id.* at 3.

[41] *Id.*

[42] Rec. Doc. 66 at 15.

[43] Rec. Doc. 68 at 2 (quoting *Feld Entertainment v. ASPCA*, correct citation not given) (internal citations and quotation marks omitted).

[44] *Id.* at 3 (quoting *Feld Entertainment v. ASPCA*, correct citation not given).

[45] *Id.*

### III. Law and Analysis

*A. Sanctions Under Federal Rule of Civil Procedure 11*

Federal Rule of Civil Procedure 11(b) provides in pertinent part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or *other paper,* an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances,*—
>
> (1) *it is not being presented for any improper purpose, such as to harass* or to cause unnecessary delay or needless increase in the cost of litigation; [and]
>
> (2) the claims, defenses, and other *legal contentions therein are warranted by* existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . .[46]

Rule 11 continues that, "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."[47] "Subparts (b)(1) and (2) of Rule 11 provide independent bases for sanctions."[48] In other words, under Rule 11, each of the two obligations mentioned above must be satisfied; "violation of either justifies sanctions."[49] Stated otherwise, an attorney "violates Rule 11 if he fails to conduct a reasonable inquiry into the law and facts underlying his motion, or if he makes a motion to delay, harass or increase the costs of litigation."[50]

---

[46] *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (en banc).

[47] Fed. R. Civ. P. 11(c)(1).

[48] *Whitehead*, 332 F.3d at 802.

[49] *Id.*

[50] *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999).

10

"In determining compliance *vel non* with each obligation, the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances."[51] "An attorney's good faith is . . . [not] enough to protect him from Rule 11 sanctions."[52] Finally, "[c]ompliance with an attorney's affirmative duties"—whether it be establishing a sufficient legal basis or eschewing an improper motive—"is measured as of the time that the document is signed."[53]

"In deciding whether a reasonable inquiry into the law has been made a district court may consider how much time the attorney had to prepare the document; whether the document contains a plausible view of the law; whether the document is filed by an attorney or a *pro se* litigant; and the complexity of the legal and factual issues in question."[54]

Likewise, in deciding whether a filing was made for an improper purpose, a court is to determine whether "it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose."[55] Because of the objective inquiry, a district court can read an improper motive into a document well-grounded in fact and law under exceptional circumstances.[56] The key is whether "the improper purpose is objectively ascertainable."[57]

---

[51] *Whitehead*, 332 F.3d at 802 (internal citations and quotation marks omitted); *see also Thomas v. Capital Sec. Servs., Inc.*, 812 F.2d 984, 988 (5th Cir. 1987) ("Rule 11 compliance is measured generally by an objective standard of attorney performance.").

[52] *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

[53] *Id.*

[54] *Thomas*, 812 F.2d at 988.

[55] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580 (5th Cir. 2008).

[56] *Id.*

[57] *Id.* at 580–81.

*B. Elements of a RICO Claim*

In *St. Germain v. Howard*, the Fifth Circuit explained a RICO violation as such:

> Claims under RICO, 18 U.S.C. § 1962, have three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. The predicate acts can be either state or federal crimes.[58]

Specifically, RICO defines "racketeering activity" as any act which is indictable under any of the following provisions of 18 U.S.C. § 1503.[59]

*C. Whether Sanctions are Warranted Against Andrews for Violating Rule 11*

**1.** *Whether Plaintiffs' RICO Claims were Insufficiently Grounded in Law*

In Plaintiffs' Second Amended Complaint that Andrews signed as counsel of record, Plaintiffs allege that Defendants perpetrated a series of obstructive acts in different civil actions in district court and USPTO proceedings. This conduct, according to Plaintiffs, violated 18 U.S.C. §§ 1503, 1505, and 1512 and qualifies as "racketeering activity" for the purposes of a RICO claim.

As set forth in 18 U.S.C. § 1961(1), obstruction of justice and witness tampering, as defined by 18 U.S.C. §§ 1503 and 1512 are among those activities that can constitute racketeering.[60] Section 1961(1) does not list a violation of 18 U.S.C. § 1505, which prohibits obstruction of justice in federal department or agency proceedings, as a predicate act.[61]

---

[58] 556 F.3d 261, 263 (5th Cir. 2009).

[59] *See* 18 U.S.C. § 1961(1).

[60] *See* 18 U.S.C. § 1961(1)(B).

[61] *Id.*

To establish a violation of section 1503, a party must establish the following three elements: "(1) that a judicial proceeding was pending; (2) that the defendant had knowledge of the judicial proceeding; and (3) that the defendant acted corruptly with the specific intent to influence, obstruct, or impede that judicial proceeding in its due administration of justice."[62] Moreover, "the [corrupt] act must have a relationship in time, causation, or logic with the judicial proceeding."[63]

A violation of 18 U.S.C. § 1512(c), the witness tampering statute, is committed when a person

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.[64]

Defendants maintain that as the conduct in question involved litigation activity, any reasonable attorney would have known that the conduct cannot constitute a predicate act for RICO purposes. Significantly, the Fifth Circuit has not addressed the issue of whether activity conducted during prior litigation is immune from RICO prosecution. In *St. Germain*, the Fifth Circuit case that comes closest to addressing this, the court dismissed a RICO complaint because it failed to allege the requisite predicate criminal acts:

> In their complaint, Appellants allege that the predicate acts committed by Appellees were mail and wire fraud. However, the district court found, and Appellants acknowledged, that the "patterns of racketeering activity" they allege are at worst violations of the rules of professional responsibility. Because

---

[62] *United States v. Richardson*, 676 F.3d 491, 501–02 (5th Cir. 2012) (citation and internal quotation marks omitted).

[63] *Id.* (citing *United States v. Aguilar*, 515 U.S. 593, 599 (1995)).

[64] 18 U.S.C. § 1512(c).

>Appellants have not alleged the requisite predicate *criminal* acts under RICO, they have not met the pleading standard of Rule 12(b)(6).[65]

Defendants interpret *St. Germain* to stand for the proposition that the predicate criminal act must be of a criminal nature.[66]

*St. Germain* is not directly on point in this case. The Fifth Circuit has not expressly addressed the issue of whether the litigation activity alleged here, which is criminal under several federal statutes, can qualify as predicate acts for RICO purposes. Defendants are apparently aware that no Fifth Circuit case directly addresses the question of whether activity related to litigation can be the predicate crime for a RICO action, as the Defendants cite to several cases outside the Fifth Circuit for this proposition.[67]

Plaintiffs' allegations of orchestrating a litigation scheme, engaging in shame litigation, and making material misstatements in court are extremely serious, and it cannot be said that Plaintiffs' claims were so misguided as to support sanctions, even if the alleged acts are not the types of conduct that support obstruction of justice and a violation of RICO. This is especially true when one considers that there is no Fifth Circuit case on point to which Andrews could have looked for guidance. Thus, Defendants have failed to show that sanctions are warranted against Andrews for bringing a RICO claim against Defendants.

---

[65] 556 F.3d at 263.

[66] Rec. Doc. 66-1 at 12 ("In *St. Germain*, *supra*, the Court held that a RICO complaint which failed to allege the requisite predicate criminal acts was fatally defective.").

[67] *Id.* at 13–14.

## 2. *Whether Andrews Had an Improper Purpose in Filing the Second Amended Complaint*

Even if Plaintiffs' complaint was sufficiently grounded in law, Andrews can still be sanctioned if he filed the complaint for an improper purpose.[68] Despite Defendants' assertions to the contrary, there is no objective evidence that Andrews filed the Second Amended Complaint for an improper purpose. Notably, Plaintiffs argue that this case is based on new transactions and occurrences that were not at issue in the Consolidated Cases.[69] Specifically, Plaintiffs assert that this cause of action derives from SnoWizard's application for two "new trademark registrations on flavor names that were already in litigation, and submitting false, fraudulent declarations claiming *exclusive* use."[70] Not all of Plaintiffs' complained-of conduct was previously litigated in the Consolidated Cases; for example, Plaintiffs allege that SnoWizard made false material statements to the USPTO in November 2003, several years before the Consolidated Cases were filed. The objective evidence does not support a clear finding that Andrews filed the Second Amended Complaint simply to "retaliate," as Defendants claim. It is plausible that Andrews filed the lawsuit simply because there remained unlitigated claims with possible merit. Accordingly, the objective evidence here is insufficient to support a finding that Andrews acted out of improper motive. Defendants have failed to establish that Andrews acted to "exact[] revenge."[71] Therefore, Defendants' motion for sanctions on this ground must likewise fail.

---

[68] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 577 (5th Cir. 2008) ("Under the current version, courts may in rare circumstances sanction parties for pleadings like those here that, although having plausible legal theories based in fact, have an underlying improper purpose.").

[69] Rec. Doc. 64 at 9.

[70] *Id.*

[71] *Id.* at 66-1.

15

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Third Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11[72] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___21st___ day of March, 2014.

                                                *Nannette Jolivette Brown*
                                                **NANNETTE JOLIVETTE BROWN**
                                                **UNITED STATES DISTRICT JUDGE**

---

[72] Rec. Doc. 66.