**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**SNOW INGREDIENTS, INC., ET AL.**          **CIVIL ACTION**

**VERSUS**                                   **NO. 12-1412**

**SNOWIZARD, INC., ET AL.**                  **SECTION: "G" (1)**

## ORDER AND REASONS

Before the Court is a Motion to Dismiss the Second Amended and Supplemented Complaint[1] filed by Defendants SnoWizard, Inc., Ronald R. Sciortino, Jack E. Morris, and Kenneth L. Tolar (collectively, "Defendants"). Defendants contend that the Second Amended and Supplemented Complaint ("Second Amended Complaint"), filed by Plaintiffs Snow Ingredients, Inc., Simeon, Inc., Southern Snow Manufacturing, Co., Inc., Parasol Flavors, LLC, Theodore Eisenmann, Raggs Supply LP, and Special "T" Ice Co., Inc. (collectively, "Plaintiffs"), fails to state a claim for which relief can be granted. The Court has considered the Second Amended Complaint, the parties' respective briefs, the record, and the applicable law. For the reasons set forth below, the Court will grant the motion. Specifically, the Court grants the motion to dismiss with regards to the RICO, antitrust, Lanham Act, unfair trade practices, and fraud claims against SnoWizard on the basis of res judicata. Further, the Court grants the motion to dismiss with regards to the RICO claims against Morris and Tolar on the basis of there being no underlying predicate act to support a RICO claim. Finally, the Court grants the motion to dismiss regarding the malicious prosecution claims against all Defendants because there was no bona fide termination in Plaintiffs' favor in the lawsuits SnoWizard brought against Plaintiffs, as required by law for such claims to be successful.

---

[1] Rec. Doc. 62.

# I.  Background

## A. Procedural Background

Plaintiffs filed this action against Defendants in the Eastern District of Louisiana on June 1, 2012, and it was transferred to this section, Section G, because it is related to cases that were already pending in this Court in consolidated Civil Action No. 06-9170.[2] Defendants answered the complaint on July 19, 2012.[3] The next day, Plaintiffs filed an Amended Complaint.[4] With leave of Court, Plaintiffs filed a Second Amended and Supplemented Complaint on February 4, 2013.[5]  On March 12, 2013, Defendants filed the instant Motion to Dismiss Second Amended Complaint under Rule 12(b)(6).[6]  Plaintiffs opposed the motion on April 2, 2013.[7]

## B.  Factual Background

Although the above-captioned case was not consolidated with Civil Actions Nos. 06-9170, 09-3394, 10791, and 11-1499 (hereinafter, the "Consolidated Cases"), the factual background of this case is deeply intertwined with the consolidated cases.  All parties, except for the attorney-defendants, Jack Morris and Kenneth Tolar, are involved in the sale, distribution, or manufacturer of snowballs, snowball flavor concentrates, and ice-shaving machines.

Between 2003 and 2008, SnoWizard began to acquire and enforce various patent and trademark rights, and this litigation ensued when Southern Snow first filed suit in 2006.  In the consolidated cases, the claims and counterclaims predominantly covered the scope, existence, and ownership of certain patents and trademarks and the fairness of the parties' business

---

[2] *See* Rec. Doc. Nos. 1, 8.

[3] Rec. Doc. 11.

[4] Rec. Doc. 12.

[5] Rec. Doc. 53 (hereinafter "Second Amended Compl.").

[6] Rec. Doc. 62.

[7] Rec. Doc. 64.

practices. Throughout the litigation, Plaintiffs have claimed that Defendants have fraudulently and unfairly procured and enforced their claimed intellectual property rights. After significant motion practice over the course of multiple years, the remaining claims were submitted to a jury in an eight-day trial. On February 28, 2013, the jury returned a verdict, and the Court entered a judgment on the basis of the jury verdict on March 5, 2013.[8]

The jury found for Plaintiffs on a single cause of action: that Plum Street Snoballs owns a valid and enforceable trademark for the unregistered term ORCHID CREAM VANILLA and that SnoWizard used a reproduction, counterfeit, copy or colorable imitation of that trademark in a manner that was likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, sponsorship, or approval of such product under Lanham Act §§ 43(a) and 35, 15 U.S.C. §§ 1125(a) and 1117.[9] With regards to this cause of action, the jury further found that SnoWizard's conduct was "unethical, oppressive, unscrupulous, or deceptive," and that Plum Street Snoballs was entitled to the costs of the action.[10] The jury rendered judgment against Plaintiffs on all of their other causes of action[11] including additional claims involving infringement of Plaintiffs' claimed trademarks to ORCHID CREAM VANILLA and claims involving infringement of Plaintiffs' claimed trademarks to SNOW SWEET as well as SnoWizard's alleged fraudulent assertions of rights in the trademarks ORCHID CREAM VANILLA, SNOSWEET, SNOBALL, SNOBALL MACHINE, HURRICANE, MOUNTAIN MAPLE, BUTTER-CREAM, BUTTERED POPCORN, CAKE BATTER, CAJUN RED HOT, COOKIE DOUGH, DILL PICKLE, GEORGIA PEACH, KING CAKE, MUDSLIDE,

---

[8] Civ. Action No. 06-9170, Rec. Doc. 665.

[9] *Id.* at 3.

[10] *Id.* at 4.

[11] *Id.* at 1–6.

PRALINE, and WHITE CHOCOLATE & CHIPS.[12] The jury found for Defendants on six of their eight counter-claims.[13]

In addition to the trademarks claims, both Plaintiffs and SnoWizard raised multiple claims regarding SnoWizard's patent in U.S. Patent No. 7,536,871 ("Icemaker with Improved Cam Assembly").[14] The jury found against Plaintiffs on all of its false and invalid patent claims against SnoWizard and found for SnoWizard on most of its counterclaims, including all but one of its patent infringement claims.[15]

According to the Second Amended Complaint in this case, "Defendant SnoWizard is attempting to manipulate the snowball market through a scheme to assert exclusive monopoly rights to sell products in that market, threatening and bringing litigation to force withdrawal of legitimate products and producers from the market based on fraudulently asserted and obtained patent and trademark rights."[16] Plaintiffs claim that SnoWizard's attorneys Kenneth Tolar and Jack Morris have conspired with SnoWizard and Sciortino to acquire, maintain, and enforce bogus patents and trademark registrations as a means of asserting unwarranted monopoly rights, through abusive litigation and obstruction of justice.[17]

In particular, Plaintiffs allege the following:

In what Plaintiffs identify in their Second Amended Complaint as "Count 1," they allege that SnoWizard, Sciortino, Tolar, and Morris engaged in a litigation scheme that constitutes

---

[12] *Id.* at 5.

[13] *Id.* at 6–11.

[14] *Id.* at 2–11.

[15] *Id.*

[16] Rec. Doc. 53 at ¶ 14.

[17] *Id.* at ¶ 14.

obstruction of justice and a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*[18]

In "Count 2" and "Count 6," Plaintiffs allege that SnoWizard has engaged in sham litigation against Plaintiffs and made material misstatements in court and to the United States Patent and Trademark Office ("USPTO") in a manner that violates both federal and state antitrust laws.[19]

In "Counts 3–4," Plaintiffs accuse SnoWizard of violating the Lanham Act for their allegedly fraudulent trademark registration of WHITE CHOCOLATE & CHIPS and CAJUN RED HOT.[20]

In "Count 5," Plaintiffs raise another Lanham Act claim wherein they allege unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[21]

In "Count 7," Plaintiffs allege that SnoWizard has engaged in conduct that violates the Louisiana Unfair Trade Practices Act ('LUTPA'), Louisiana Revised Statute § 51:1401, *et seq.*[22]

In "Count 8" and "Count 11", Plaintiffs claim that, pursuant to Louisiana Civil Code Article 2315, SnoWizard must pay damages for fraud, obstruction of justice, and abusive litigation, and that Morris and Tolar conspired to commit those acts and are thus liable under Louisiana Civil Code Article 2324.[23]

---

[18] *Id.* at ¶¶ 312–19.

[19] *Id.* at ¶¶ 320–33, 347–51.

[20] *Id.* at ¶¶ 334–41.

[21] *Id.* at ¶¶ 342–44.

[22] *Id.* at ¶¶ 352–54.

[23] *Id.* at ¶¶ 355–56, 361–62.

In "Count 9", Plaintiffs accuse SnoWizard of malicious prosecution for pursuit of its claims in *Southern Snow Manufacturing Company, Inc. v. SnoWizard, Inc.*, Case No. 10-4275.[24]

In "Count 10", Plaintiffs raise a similar claim for SnoWizard's role in *SnoWizard, Inc. v. Doty, et al.*, Case No. 11-0515.[25]

Finally, in "Counts 10–13," Plaintiffs allege that Defendants Morris and Tolar are liable as conspirators for SnoWizard's alleged wrongdoing as set forth in "Counts 1–9."[26]

## II. Parties' Arguments

### A. SnoWizard's Arguments in Support

#### 1. Litigation of the RICO Claims is Barred by Res Judicata

SnoWizard argues that Plaintiffs' RICO claims here are "identical" to those alleged by the same plaintiffs in the Consolidated Cases.[27] SnoWizard asserts that the raised claims in the Consolidated Cases "result[ed] in the entry of a Judgment on Jury Verdict'" on March 5, 2013, and that "[r]elitigation of each of these claims and issues therefore is barred under the doctrine of res judicata."[28] Accordingly, SnoWizard concludes, "Counts 1–8" and "Count 11" of the Second Amended Complaint fail to state a claim for which relief can be granted.[29]

#### 2. Plaintiffs' RICO Claim Lacks Required Allegations of Predicate Criminal Acts and a Pattern of Racketeering Activity

Without elaboration, SnoWizard argues that Plaintiff's civil RICO claim suffers from "glaringly deficient or nonexistent allegations of a *pattern*, *relatedness*, *continuity*, *injury*,

---

[24] *Id.* at ¶ 358.

[25] *Id.* at ¶ 360.

[26] *Id.* at ¶¶ 361–66.

[27] Rec. Doc. 62-1 at 5.

[28] *Id.*

[29] *Id.* at 6.

*proximate cause*, and *standing* among other serious pleading deficiencies."[30] SnoWizard contends that the alleged "Litigation Scheme" that Plaintiffs accuse SnoWizard of perpetrating "does not satisfy RICO's requirements of a predicate criminal act or of a pattern of racketeering activity."[31] While SnoWizard acknowledges that obstruction of justice qualifies as a predicate act,[32] SnoWizard argues that Plaintiffs' RICO claim is "implausible on its face because Plaintiffs' factual allegations do not allow the Court to draw the reasonable inference that defendants committed any predicate *criminal* acts."[33]

SnoWizard cites several district court cases from outside the Fifth Circuit for the proposition that "litigation activities" cannot constitute the basis for a RICO claim.[34] SnoWizard thus argues that its conduct is not actionable under RICO because "[t]his case does not involve 'bribery of a witness' . . . or 'additional allegations of extortion or some other pattern of racketeering activity.'"[35] At most, according to SnoWizard, the allegations in the Second Amended Complaint give rise to a claim for abuse of process or malicious prosecution.[36]

Moreover, SnoWizard argues that Plaintiffs have not alleged the required "pattern of racketeering activity" that is a required element of a RICO claim.[37] SnoWizard contends that the conduct that Plaintiffs have alleged constitutes a "pattern" of racketeering activity were all "part

---

[30] *Id.* at 8.

[31] *Id.* at 7.

[32] *Id.* at 7–8.

[33] *Id.* at 8.

[34] *Id.* at 9 (citations omitted).

[35] *Id.* at 10 (citations omitted).

[36] *Id.*

[37] *Id.*

and parcel of a single, discrete and otherwise lawful commercial transaction" and therefore cannot form the basis of a RICO clam.[38]

### 3. Plaintiffs' Malicious Prosecution Claim Fails Because the Lawsuits Did Not Terminate in Their Favor

SnoWizard further argues that "Counts 9–10" and "Counts 12–13" must be dismissed because the underlying cases forming the basis of those malicious prosecution claims were dismissed by consent.[39] This includes Case No. 10-4275, which forms the basis of the claim asserted in "Count 9" and "Count 12." SnoWizard asserts that Case No. 10-4275 was originally consolidated with the Consolidated Cases and that the parties agreed to dismiss all the claims alleged in Case No. 10-4275.[40]

Second, SnoWizard argues that the parties settled Case No. 11-0515, which is the underlying case for "Count 10" and "Count 13," on November 6, 2012.[41] SnoWizard argues that "[a]s a matter of law, dismissal by consent or settlement does not constitute termination in a party's favor." Because success on the merits is an element in a malicious prosecution claim,[42] SnoWizard contends that "Counts 9–10" and "Counts 12–13" should be dismissed.

### B. Plaintiffs' Arguments in Opposition

### 1. The Second Amended Complaint Alleges a Pattern of Racketeering Activity That is Substantively Different From That Raised in Prior Actions

Plaintiffs argue that the RICO claim in the Second Amended Complaint derives from the Defendants' alleged obstruction of justice "based in part on new transactions or occurrences that

---

[38] *Id.* at 11.

[39] *Id.* at 12–13.

[40] *Id.* at 12.

[41] *Id.*

[42] *Id.* at 12–13 (citing *Adrian v. Selve*, 364 F. App'x 934, 938 (5th Cir. 2010)).

8

only became actionable in 2012."[43] Plaintiffs, therefore, claim that it is irrelevant that RICO claims based upon alleged mail and wire fraud and alleged extortion have been dismissed in Case No. 11-1499.[44]

### 2. Res Judicata is Inapplicable Because Neither the Parties nor the Causes of Action in This Case are Identical to Parties or Causes of Action in Prior Cases

Plaintiffs contend that only six of the nine plaintiffs in Case No. 11-1499 are party to this case.[45] Moreover, they note that while SnoWizard and Sciortino were defendants in Case No. 11-1399, Defendants Morris and Tolar were not.[46] Likewise, Plaintiffs argue that the claims against Morris and Tolar are not identical to those levied against SnoWizard and Sciortino, and the lawyers' interests are not aligned with those of the clients SnoWizard and Sciortino.[47]

Plaintiffs assert that issue preclusion cannot apply here to bar their claims. They contend that "none of the issues of fact or law in the [Second] Amended Complaint in [this case] were actually litigated and resolved in the 06-9170 consolidated litigation."[48] Plaintiffs contend that SnoWizard in that litigation "gave up its claims to the vast majority of its asserted trademarks—admitting that they were generic and not capable of serving as trademarks."[49] In particular, Plaintiffs claim that the issue here is whether Defendants "obstructed justice by making misrepresentations" in the relevant proceedings and litigation regarding SnoWizard's purported trademarks in ORCHID CREAM VANILLA and KING CAKE[50] and whether Plaintiffs make a

---

[43] Rec. Doc. 64 at 2.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.* at 3.

[49] *Id.*

[50] *Id.*

similar argument regarding the purported trademarks SNOSWEET, WHITE CHOCOLATE & CHIPS, and CAJUN RED HOT, which Plaintiffs acknowledge were at issue in the Consolidated Cases for different reasons.[51] Likewise, Plaintiffs argue that the purported trademark SNOWIZARD at issue here was not at issue at all in the Consolidated Cases.[52] Finally, Plaintiffs argue that the patent issues in the Consolidated Cases are different than the issues regarding the patents here because Plaintiffs are alleging that Defendants made misrepresentations and submitted false declarations during the litigation of the patents, noting that "[*t*]*hose* patent issues were not actually litigated or resolved in the 06-9170 trial."[53]

Plaintiffs next argue that claim preclusion cannot apply here to bar their claims against Defendants. They argue that to determine preclusion, the question is whether the claims in the later action might have been brought in the earlier action. Plaintiffs respond with an emphatic no.[54] Plaintiffs point to Case No. 09-3394, wherein Plaintiffs allege SnoWizard forged and submitted certain documents to the Court and made false declarations to the Court.[55] Plaintiffs argue that their lawyer "was explicitly threatened with *sanctions* several times if he dared to try and raise this issue in" the Consolidated Cases.[56] Plaintiffs also note that the pleadings in Case No. 09-3394 were closed "long before the obstruction of justice happened."[57] Plaintiffs tried to amend the obstruction-of-justice claims in 11-1499 but were denied that opportunity by the

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* at 4.

[55] *Id.*

[56] *Id.*

[57] *Id.*

Court.[58] Plaintiffs maintain that there is no other way the obstruction claims might have been pleaded.[59]

### 3. The Amended Complaint Alleges a Predicate Act in Support of its RICO Claim

Plaintiffs also contend that SnoWizard's alleged conduct constitutes obstruction of justice, which is a sufficient foundation for their RICO and antitrust claims. In particular, Plaintiffs assert that the Second Amended Complaint "claims SnoWizard and its attorneys perpetrated a series of obstructive acts in different civil actions in the District Court, in USPTO TTAB appeal proceedings, and in USPTO TTAB opposition and cancellation proceedings."[60] Moreover, Plaintiffs contend that under the facts alleged here, bad faith litigation can form the basis of an obstruction of justice claim for RICO purposes.

### 4. The Amended Complaint Adequately Alleges a Pattern of Racketeering Activity

Plaintiffs further contend that the Second Amended Complaint sufficiently alleges a "pattern" of racketeering activity because it complains of conduct SnoWizard committed in separate, unconsolidated proceedings before the Court and the USPTO.[61]

### 5. The Prior Lawsuits Terminated in Plaintiffs' Favor

Finally, Plaintiffs argue that SnoWizard is unable "to cite any controlling precedent for their contention that no 'favorable termination' occurred" in Case Nos. 10-4275 and 11-0515.[62]

---

[58] *Id.*

[59] *Id.*

[60] *Id.* at 7.

[61] *Id.* at 8–9.

[62] *Id.* at 10.

Plaintiffs argue that the case upon which SnoWizard relies is unpublished and nonbinding; moreover, they note that that case involved distinguishable facts and claims not at issue here.[63]

### III. Standard of Review

The Federal Rules of Civil Procedure provide that an action may be dismissed "for failure to state a claim upon which relief can be granted."[64] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[65] "Factual allegations must be enough to raise a right to relief above the speculative level,"[66] and a claim is facially plausible when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[67] "[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."[68]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[69] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[70] "While legal conclusions can provide the framework of a complaint, they must be supported by factual

---

[63] *Id.* at 9–10 (citing *Adrian v. Selbe*, 364 F. App'x 934 (5th Cir. 2010)).

[64] Fed. R. Civ. P. 12(b)(6).

[65] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[66] *Twombly*, 550 U.S. at 556.

[67] *Id.* at 570.

[68] *Kaiser Aluminum & Chem Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (internal quotation marks omitted).

[69] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[70] *Iqbal*, 556 U.S. 662, 677–78.

allegations."[71] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[72] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[73]  That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[74] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[75] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[76]

## IV. Law and Analysis

### A. Dismissal of Claims Under Doctrine of Res Judicata

The "rule of res judicata encompasses two separate but linked preclusive doctrines: (1) true res judicata or claim preclusion and (2) collateral estoppel or issue preclusion."[77] To prevail on its argument that "Counts 1–8" and "Count 11" of the Second Amended Complaint are precluded under res judicata principles, SnoWizard must establish four elements. First, the parties in this litigation and the Consolidated Cases must be "identical or in privity."[78] Second, the judgment in the Consolidated Cases must have been "rendered by a court of competent

---

[71] *Id.* at 679.

[72] *Id.* at 678.

[73] *Id.*

[74] *Id.*

[75] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[76] *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007)).

[77] *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013) (citation omitted).

[78] *See id.* at 467.

jurisdiction."[79] Third, the Consolidated Cases must have been "concluded by a final judgment on the merits."[80] Fourth, and finally, "the same claim or cause of action" must have been involved in both the Consolidated Cases and this matter.[81]

SnoWizard argues that "Counts 1–8" and "Count 11" of the Second Amended Complaint must be dismissed because the doctrine of res judicata bars their re-litigation in this action.[82] The Second Amended Complaint raises "Count 1" against all Defendants for alleged violation of the civil RICO provisions, "Counts 2–8" solely against SnoWizard, and "Count 11" against Morris and Tolar. In particular, SnoWizard asserts that the claims asserted in all of those "counts" were disposed of in the Court's entry of judgment on the jury verdict in the Consolidated Cases.[83] It is undisputed that a court of competent jurisdiction issued a final judgment on the merits in the Consolidated Cases.[84] Therefore, the Court need only determine whether claims identical to those raised in "Counts 1–8" and "Count 11" were alleged in the Consolidated Cases and whether those cases involved the same parties.

### 1. *Identity of Parties in the Consolidated Cases and This Action*

SnoWizard asserts that "[a]ll of the plaintiffs in this case were plaintiffs in the consolidated litigation."[85] That is true, notwithstanding Plaintiffs' assertion that "the plaintiff parties are 6 out of the 9 parties who were plaintiffs in the other Civil-RICO action, No. 11-

---

[79] *See id.*

[80] *See id.*

[81] *See id.*

[82] *See* Rec. Doc. 62-1 at 6.

[83] *Id.* at 5.

[84] *See id.* at 6 (arguing all four elements are satisfied); Rec. Doc. 64 at 2–5 (only arguing that the claim and parties are different).

[85] Rec. Doc. 62-1 at 6.

1499."[86] Likewise, defendants SnoWizard and Sciortino were parties to the Consolidated Cases, as they are here. SnoWizard, Sciortino, and Plaintiffs were parties in the Consolidated Cases. However, neither Tolar nor Morris was party to the Consolidated Cases.

A defendant who was not party to the prior litigation "can assert res judicata so long as it is in 'privity' with the named defendant" in the prior litigation.[87] "Privity" requires a court "to look to the surrounding circumstances to determine whether claim preclusion is justified."[88] The rule is that "*parties which are sufficiently related* to merit the application of claim preclusion are in privity."[89] In other words, a finding of privity for preclusion purposes is appropriate where "the party to the first suit is so closely aligned with the nonparty's interests as to be his 'virtual representative.'"[90]

Under the Supreme Court's holding in *Taylor v. Sturgell*,[91] "virtual representation" is constitutional[92] under one of six scenarios:

First, a person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement. . . .

Second, nonparty preclusion may be justified based on a variety of pre-existing substantive legal relationships between the person to be bound and a party to the judgment. . . .

Third, we have confirmed that in certain limited circumstances, a nonparty may be bound by a judgment because she was adequately represented by someone with

---

[86] Rec. Doc. 64 at 2.

[87] *See Russell v. SunAmerican Sec., Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992) (citation omitted).

[88] *Id.*

[89] *Id.*(emphasis added).

[90] *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1297 (5th Cir. 1992) (citations omitted).

[91] 553 U.S. 880, 904 (2008).

[92] The Court has found that virtual representation in certain instances would run afoul of the Fifth Amendment's right to due process by depriving a party of its day in court. *See id.*

15

the same interests who was a party to the suit. Representative suits with preclusive effect on nonparties include properly conducted class actions, and suits brought by trustees, guardians, and other fiduciaries. . . .

Fourth, a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered. . . .

Fifth, a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy. . . .

Sixth, in certain circumstances a special statutory scheme may expressly foreclose successive litigation by nonlitigants if the scheme is otherwise consistent with due process.[93]

Here, it appears that only the third situation, where a nonparty is adequately represented, could apply to Morris and Tolar, who were not parties to the earlier action. In this case, virtual representation would not be appropriate because Morris and Tolar's interests "are *not* aligned with those of SnoWizard and Sciortino."[94] Plaintiffs perceptively point out that Morris and Tolar "have their own separate ethical obligations to the Court and to the USPTO . . . ."[95] Moreover, as Plaintiffs argue, Morris and Tolar, as SnoWizard's counsel in the Consolidated Cases, "have a defense available to them that is not available to SnoWizard and Sciortino—if it turns out that the attorneys always made reasonable inquiry and always relied on Sciortino's misrepresentations *to them*, then the attorneys can get out of this case."[96] Even if Plaintiffs' assertion, which they offer no authority for, is correct, Plaintiffs have not brought forth sufficient facts to indicate that Morris and Toler are liable as conspirators to SnoWizard's alleged wrongdoings to the degree of plausibility required under *Bell Atlantic Corp. v. Twombley*.[97] In

---

[93] *Id.* at 893–95 (citations, internal quotation marks, and alterations omitted).

[94] Rec. Doc. 64 at 2.

[95] *Id.*

[96] *Id.* at 3.

[97] 550 U.S. 544 (2007)

16

light of the divergent interests between Morris and Tolar, and SnoWizard and Sciortino that Plaintiffs have highlighted, this Court finds that Morris and Tolar are not "identical parties" to those involved in the Consolidated Cases but still finds it appropriate to dismiss the claims against them for the reason given above.

Accordingly, SnoWizard's motion to dismiss "Count 1" and "Count 11" against Morris and Tolar cannot be granted on res judicata grounds; however, it is granted on other grounds— namely, that Plaintiffs have failed to plead sufficient facts that suggest the participation of Morris and Tolar in the alleged conspiracy. Furthermore, res judicata may still bar "Counts 1–8" against SnoWizard if those claims are identical to the claims asserted in the Consolidated Cases.

### 2. *Identity of the Claims Alleged in the Consolidated Cases and This Action*

To determine whether "Counts 1–8" are sufficiently identical to claims adjudicated in the Consolidated Cases, the Court must apply the "transactional test" adopted by the Fifth Circuit.[98] Under this test,

> the critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts. The rule is that res judicata bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated.[99]

The Fifth Circuit continued in *See Travelers*,

> What factual grouping constitutes a "transaction", and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether the form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.[100]

---

[98] *See Travelers Ins. Co. v. St. Jude Hosp. of Kenner, Louisiana, Inc.*, 37 F.3d 193, 195 (5th Cir. 1994) (citations omitted).

[99] *Id.* (citation, internal quotation marks and alterations omitted).

[100] *Petro-Hunt, LLC v. United States*, 365 F.3d 385, 396 (5th Cir. 2004) (quoting Restatement (Second) of Judgments, § 24(2)).

SnoWizard does not explain how "Counts 1–8" satisfy this test. Instead, it only concludes that "both this case and the consolidated litigation involved the same nucleus of operative facts because the jury in the consolidated litigation decided the identical factual issues alleged in the Second Amended Complaint in this case."[101] Plaintiffs maintain that the claims in this litigation all depend on whether Defendants have obstructed justice and that the claims therefore do not involve the same factual issues as raised in prior litigation or the same claims.[102]

All of Plaintiffs' claims in "Counts 1–8" involve alleged conduct by SnoWizard during the last decade purportedly intended to monopolize the snowball market, fraudulently obtain patents and trademarks, and unfairly compete against business rivals. The claims involve the same patents, trademarks, and alleged misstatements that were at issue in the Consolidated Cases, or are so sufficiently a part of SnoWizard's alleged plot to ruin competitors that Plaintiffs could have brought the claims in the Consolidated Cases. "Counts 1–8," for instance, all allege that SnoWizard acted "with the specific intent to use the SnoWizard Patent & Trademark Litigation Scheme for acquisition, enforcement, and litigation of bogus patent and trademark monopoly and exclusive rights, to injure SnoWizard's competitors, injure competition in the market for ice-shaving machines, snowball flavor concentrates, and snowball supplies, and establish monopoly rights to sell snowball products."[103]

Likewise, Plaintiffs claim in "Count 2" that SnoWizard "has engaged in sham litigation against the Plaintiffs, and has made material misstatements in Court and to the USPTO."[104] In these claims, Plaintiffs assert that SnoWizard has acted with the specific intent to create a

---

[101] Rec. Doc. 62-1 at 6.

[102] *See* Rec. Doc. 64 at 3–4

[103] Second Amended Compl. at ¶ 73 (incorporated into "Counts 2–8").

[104] *Id.* at ¶ 323.

monopoly in the ice-shaving machine and flavor-concentrate markets "by asserting undeserved and fraudulently obtained patent and trademark monopoly and exclusive rights."[105] There, Plaintiffs allege that "[t]here is a dangerous probability that SnoWizard's attempted monopolization will succeed because the fraudulently obtained patents and trademark registrations appear to be facially valid and sanctioned by the federal and state governments[.]"[106] Plaintiffs, in essence, accuse SnoWizard of violating 15 U.S.C. § 2, 15 U.S.C. § 26.[107] In "Count 6," Plaintiffs accuse SnoWizard of violating in the same manner the equivalent state law, Louisiana Revised Statute section 51:123.

The jury expressly found for SnoWizard on these claims in the Consolidated Cases.[108] Despite Plaintiffs' repeated assertions that SnoWizard "fraudulently" obtained patents and trademarks, the jury rejected those claims. Specifically, the jury found that Sciortino did not make material misstatements to the USPTO; that SnoWizard did not fraudulently obtain its federal trademarks for WHITE CHOCOLATE & CHIPS and SNOSWEET; that SnoWizard did not fraudulently obtain its state trademarks for WHITE CHOCOLATE & CHIPS, MOUNTAIN MAPLE, and SNOSWEET; and that SnoWizard held a valid trademark to CAJUN RED HOT.[109]

Here, Plaintiffs resuscitate those very same claims. In "Counts 3–4," Plaintiffs allege that SnoWizard fraudulently obtained its trademarks for WHITE CHOCOLATE & CHIPS and

---

[105] *Id.* at ¶ 328.

[106] *Id.* at ¶ 329.

[107] *Id.* at ¶¶ 332–33.

[108] *See Southern Snow Mfg. Co., et al. v. SnoWizard, et. al.*, Case No. 06-9170, Rec. Doc. 709-1 at 7–8 (finding no violation of law because there was no "dangerous probability that Defendant SnoWizard would achieve its goal of monopoly power in the relevant market").

[109] *See id.* at 1–23.

CAJUN RED HOT in violation of 15 U.S.C. § 1120.[110] As noted, however, the jury expressly found that (1) SnoWizard did not fraudulently obtain its WHITE CHOCOLATE & CHIPS trademark and (2) SnoWizard possesses a valid trademark to CAJUN RED HOT.[111]

Plaintiffs do not even attempt to argue that the underlying bases for each of "Counts 1–8" have not been previously litigated. Indeed, the Second Amended Complaint specifically concedes this. The complaint recites each particular case plaintiffs have brought against SnoWizard accusing them of various trademark, anti-trust, and business violations.[112] For some reason, Plaintiffs seem to believe that the obstruction-of-justice allegation lodged in the Second Amended Complaint revives the previously adjudicated or precluded claims.[113] While Plaintiffs maintain that these claims are based on new transactions and occurrences[114]—SnoWizard's application for two "new trademark registrations on flavor names"[115]—according to the Second Amended Complaint, those two new registrations are for WHITE CHOCOLATE & CHIPS and CAJUN RED HOT, two of the four trademarks on which the jury found in SnoWizard's favor in the previous action.[116] Plaintiffs are seeking to relitigate previously decided claims.

In short, the claims are sufficiently identical to the claims in the previous matter that "the plaintiff bases the two actions on the same nucleus of operative facts,"[117] which precludes them. Other than the obstruction of justice allegation, there is nothing alleged in the Second Amended

---

[110] Second Amended Compl. at ¶¶ 334–341.

[111] *See Southern Snow Mfg. Co., et al. v. SnoWizard, et. al.*, Case No. 06-9170, Rec. Doc. 709-1 at pp. 9–10, 14.

[112] *See, e.g.*, Second Amended Compl. at ¶¶ 182–205 (discussing claims related to WHITE CHOCOLATE & CHIPS in context of Consolidated Cases and USPTO proceedings).

[113] *See* Rec. Doc. 64 at 4.

[114] Rec. Doc. 64 at 9.

[115] *Id.*

[116] *See* Second Amended Compl. at ¶¶ 193, 212.

[117] *See Travelers Ins. Co.*, 37 F.3d at 195.

Complaint that was not adjudicated previously or is not precluded because it should have been adjudicated previously. Everything derives from the same set of facts. The facts alleged in the Second Amended Complaint "are related in time, space, origin, [and] motivation" and would have formed, and indeed already did form, the basis of "a convenient trial unit."[118] Accordingly, "Counts 1–8" are precluded as to SnoWizard and Sciortino because all four elements of res judicata have been met: (1) the dispute involves the same parties in a prior lawsuit that (2) involved the same claims, (3) went to a final judgment on the merits and (4) was rendered by a court of competent jurisdiction.

Res judicata does not apply to these claims against Morrison and Tolar. Plaintiffs, however, have had three opportunities to properly plead these claims against Morrison and Tolar.[119] Despite this, Plaintiffs have failed to allege any facts indicating Morrison and Tolar participated in a conspiracy to further the alleged wrongdoing contained in "Counts 2–8." Accordingly, Plaintiffs' claims in "Counts 2–8" against Morrison and Tolar must likewise be dismissed.

## B. Dismissal of RICO Claim

While Plaintiffs are barred from asserting the alleged RICO claim, brought in "Count 1," against SnoWizard or Sciortino, they may be able to allege that claim against Morris and Tolar, who were not parties to the previous action. Thus, the Court must next address Defendants' assertion that the RICO claim fails as a matter of law.

In *St. Germain v. Howard*, the Fifth Circuit explained a RICO violation as such:

---

[118] *Petro-Hunt*, 365 F.3d at 396.

[119] *See* Rec. Docs. 1, 12 & 53.

> Claims under RICO, 18 U.S.C. § 1962, have three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. The predicate acts can be either state or federal crimes.[120]

SnoWizard challenges the sufficiency of Plaintiffs' RICO claim on two grounds. First, SnoWizard asserts that its purported "Litigation Scheme" against Plaintiffs does not constitute a predicate criminal act. Second, SnoWizard asserts that the purported "Litigation Scheme" lacked the continuity necessary to constitute a "pattern of racketeering activity."

### 1. Predicate Act: Litigation Activity as Obstruction of Justice

Plaintiffs allege that Defendants perpetrated a series of obstructive acts in different civil actions in district court and USPTO proceedings. This conduct, according to Plaintiffs, violated 18 U.S.C. §§ 1503, 1505, 1512 and qualifies as "racketeering activity" for the purposes of a RICO claim.

As set forth in 18 U.S.C. § 1961(1), obstruction of justice and witness tampering, as defined by 18 U.S.C. §§ 1503, 1512, are among those activities that can constitute racketeering.[121] Section 1961(1) does not list a violation of 18 U.S.C. § 1505, which prohibits obstruction of justice in federal department or agency proceedings, as a predicate act.[122] Thus, this inquiry need only consider 18 U.S.C. §§ 1503 and 1512, which were passed by Congress "to

---

[120] 556 F.3d 261, 263 (5th Cir. 2009).

[121] *See* 18 U.S.C. § 1961(1)(B).

[122] *Id.*

protect individuals involved in federal judicial proceedings and to prevent miscarriages of justice."[123]

To establish a violation of section 1503, a party must establish the following three elements: "(1) that a judicial proceeding was pending; (2) that the defendant had knowledge of the judicial proceeding; and (3) that the defendant acted corruptly with the specific intent to influence, obstruct, or impede that judicial proceeding in its due administration of justice."[124] Moreover, "the [corrupt] act must have a relationship in time, causation, or logic with the judicial proceeding."[125]

A violation of 18 U.S.C. § 1512(c), the witness tampering statute, is committed when a person

> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so.[126]

Defendants maintain that as the conduct in question involved litigation activity, it cannot constitute a predicate act for RICO purposes. The Fifth Circuit has not addressed the issue of whether activity conducted during prior litigation is immune from RICO prosecution. In *St. Germain*, the Fifth Circuit affirmed the district court's granting of a motion to dismiss a RICO complaint because the complaint failed to allege the requisite predicate criminal acts:

> In their complaint, Appellants allege that the predicate acts committed by Appellees were mail and wire fraud.  However, the district court found, and

---

[123] *United States v. Richardson*, 676 F.3d 491, 501–02 (5th Cir. 2012) (citation and internal quotation marks omitted).

[124] *Id.* (citations omitted).

[125] *Id.* (citing *United States v. Aguilar*, 515 U.S. 593, 599 (1995)).

[126] 18 U.S.C. § 1512(c).

> Appellants acknowledged, that the "patterns of racketeering activity" they allege are at worst violations of the rules of professional responsibility.  Because Appellants have not alleged the requisite predicate *criminal* acts under RICO, they have not met the pleading standard of Rule 12(b)(6).[127]

Defendants interpret *St. Germain* to stand for the proposition that the predicate criminal act must be of a criminal nature.[128] Because no Fifth Circuit case directly addresses the question of whether activity related to litigation can be the predicate crime for a requisite action, the Defendants cite to several cases outside the Fifth Circuit for this proposition.[129]

The first case cited by Defendants comes from the Eleventh Circuit. The Eleventh Circuit has articulated clear policy reasons why litigation activity cannot be the basis for a RICO prosecution. In *United States v. Pendergraft*, the court opined that, "[P]rosecuting litigation activities as federal crimes would undermine the policies of access and finality that animate our legal system. Moreover, allowing such charges would arguably turn many state-law actions for malicious prosecution into federal RICO actions."[130] Coming to the same conclusion, the Eighth Circuit in *I.S. Joseph Co. v. J. Lauritzen A/S* explained that, "If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal criminal statute is unnecessary."[131] Finally, the First Circuit shares the Eighth Circuit and Eleventh Circuit's concerns. In *Willis v. Lipton*, the First Circuit warned that, "An extension of RICO standing [in

---

[127] 556 F.3d at 263.

[128] Rec. Doc. 62-1 at 8 ("Under *St. Germain* . . . failure to allege any requisite predicate criminal acts under RICO is fatal to "Count 1" of plaintiffs' Second Amended Complaint.").

[129] *Id.* at 9.

[130] 297 F.3d 1198, 1208 (11th Cir. 2002).

[131] 751 F.2d 265, 267 (8th Cir. 1984).

cases of malicious prosecution] would serve to 'federalize' a substantial volume of common law fraud litigation traditionally left to state courts."[132]

On the other hand, Plaintiffs point to *Feld Entertainment, Inc. v. ASPCA*[133] for the proposition that "lies or misrepresentations in the course of civil discovery" can form the basis of an obstruction of justice charge, which Plaintiffs argue is a predicate act for bringing a RICO suit.[134] However, *Feld Entertainment* involved allegations far more characteristic of obstruction of justice than the allegations at issue here, namely, "bribery and illegal witness payments."[135]

Here, Plaintiffs allege that Defendants are "threatening and bringing litigation to force withdrawal of legitimate products and producers from the market based on fraudulently asserted and obtained patent and trademark rights."[136] In *Feld Entertainment*, in contrast, the allegations went to the heart of the judicial process. The court was quick to note that the allegations were "not limited to claims that defendants filed false document or otherwise *engaged in frivolous and harassing litigation*,"[137] as is the case here.  Rather, what brought the matter within the purview of RICO was that "[plaintiffs] claim[ed] the entire lawsuit was based on bribery of the lead plaintiff and witness."[138]

Contrary to Plaintiffs' understanding of the case, *Feld Entertainment* supports dismissal of the RICO claim in Plaintiffs' Second Amended Complaint rather than supports it. In *Feld Entertainment*, it was something *more* than abusive litigation that supported the underlying

---

[132] 947 F.2d 998, 1001 (1st Cir. 1991).

[133] 873 F.Supp.2d 288  (D.D.C. 2012).

[134] Rec. Doc. 64 at 7.

[135] *Id.* at 302.

[136] Rec. Doc. 53 at ¶ 14.

[137] 873 F.Supp.2d at 319 (emphasis added).

[138] *Id.*

criminal predicate acts. Namely, it was the defendant's alleged bribery of parties and witnesses. Here, in contrast, Plaintiffs only allege fraud in obtaining trademarks and vexatious litigation. They make no allegations of bribery or other activity that cuts to the core of the integrity of the judicial process.  Plaintiffs' allegations of orchestrating a litigation scheme, engaging in sham litigation, and making material misstatements in court, while extremely serious, are not the types of conduct that support obstruction of justice and a violation of RICO.  The authority cited by both parties makes this clear. Thus, Plaintiffs have failed to allege a predicate act for a RICO claim. Accordingly, "Count 1" must be dismissed as alleged against Tolar and Morrison[139] for failure to state a claim for which relief may be granted

### 2.  *Allegations of Pattern of Racketeering Activity*

Even if Plaintiffs' allege a predicate act, Plaintiffs still must allege a "pattern of racketeering activity"[140] to make out a *prima facie* RICO claim. As noted above, a "pattern" requires both that the alleged acts are "related to each other and that they have 'continuity.'"[141] "Predicate acts are 'related' if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."[142] Meanwhile, "continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."[143]

---

[139] The RICO claims against SnoWizard and Sciortino can be dismissed on res judicata grounds, as discussed.

[140] *St. Germain*, 556 F.3d at 263.

[141] *In re Burzynski*, 989 F.2d at 742.

[142] *Id.* (citation and internal quotation marks omitted).

[143] *H.J., Inc. v. Nw. Bell. Tel. Co.*, 492 U.S. 229, 241 (1989).

Plaintiffs argue that this case is based on new transactions and occurrences that were not at issue in the Consolidated Cases.[144] Specifically, Plaintiffs assert that this cause of action derives from SnoWizard's application for two "new trademark registrations on flavor names that were already in litigation, and submitting false, fraudulent declarations claiming *exclusive use*."[145]

Defendants reply that Plaintiffs have not alleged continuity because "all of the purported predicate acts [Plaintiffs] allege were part and parcel of a single, discrete and otherwise lawful commercial transaction, namely defending against the lawsuits filed by plaintiffs themselves."[146] In support, SnoWizard cites *In re Burzynski*,[147] in which the Fifth Circuit held that a plaintiff failed to plead the required "continuity" element because all of the predicate acts occurred during the course of a single lawsuit. The Fifth Circuit held that such conduct "did not constitute or threaten long-term criminal activity."[148]

The Court finds that Plaintiffs' allegations that SnoWizard and Sciortino engaged in obstruction of justice by making false statements to the USPTO in proceedings separate and apart from statements asserted during the previous litigation could show a "pattern of racketeering activity," as defined by the Fifth Circuit.[149] Moreover, not all of Plaintiffs' complained-of conduct arose during the Consolidated Cases; thus, *In re Burzynski* is inapposite here. For example, Plaintiffs allege that SnoWizard made false material statements to the USPTO in November 2003, several years before the Consolidated Cases were filed.

---

[144] Rec. Doc. 64 at 9.

[145] *Id.*

[146] Rec. Doc. 62-1 at 11.

[147] 989 F.2d 733 (5th Cir. 1993).

[148] *Id.* at 743.

[149] *See, e.g., St. Germain*, 556 F.3d at 263; *In re Burzynski*, 989 F.2d at 742.

Accordingly, the alleged pattern of activity here is sufficiently pleaded. However, because Plaintiffs have failed to allege a predicate act, as discussed above, Plaintiffs' RICO claim must still fail.

### C. Dismissal of Claims for Malicious Prosecution

SnoWizard attacks "Counts 9–10" and "Counts 12–13" of the Second Amended Complaint as failing to state a claim for which relief may be granted. It contends that the underlying bases of the two malicious prosecution claims[150] did not terminate in Plaintiffs' favor and therefore deprive the claim of a required element.

"Under Louisiana law, a malicious prosecution claim requires: 1) the commencement of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant against the present plaintiff who was the defendant in the original proceeding; 3) its bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damages conforming to legal standards resulting to the plaintiff."[151] "The obvious purpose of the 'bona fide termination' requirement in malicious prosecution cases is that the underlying litigation should be brought to a conclusion *on the merits* before a malicious prosecution suit based on the underlying litigation is allowed to proceed."[152] Thus, "a merely procedural victory that does not relate to the merits of the suit is not a bona fide termination for the purposes of a subsequent action for malicious prosecution."[153]

---

[150] Plaintiffs brought the malicious prosecution claims under Louisiana state law as state law pendent claims.

[151] *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000) (citing *Hibernia Nat'l Bank v. Bolleter*, 390 So. 2d 842, 843 (La. 1980)).

[152] *Savoie v. Rubin*, 2001-3275 (La. 6/21/02); 820 So. 2d 486, 488.

[153] *Milling, Benson, Woodard, Hillyer, Pierson & Miller, LLP v. American Marine Holding Co.*, 98-1462 (La. App. 4 Cir. 3/3/99); 729 So. 2d 139, 142.

### 1. Case No. 10-4275

In "Count 9" and "Count 12," Plaintiffs raise a claim for malicious prosecution and conspiracy to maliciously prosecute against SnoWizard, Morris, and Tolar for claims alleged in Case No. 10-4275. Plaintiffs allege that SnoWizard sued Southern Snow for trademark infringement and dilution of the term SNOWIZARD under the Lanham Act and under Louisiana Law.[154] Plaintiffs also allege that SnoWizard sued them for patent infringement of U.S Patent No. 7,536,871 ("Icemaker with Improved Cam Assembly").[155] Finally, Plaintiffs assert that the case was dismissed without prejudice.[156]

Significantly, Plaintiffs have not alleged that Case No. 10-4275 ended in a "bona fide termination" under Louisiana law. According to judicially noticeable documents that may be relied upon for this motion to dismiss,[157] Plaintiff Southern Snow initiated Case No. 10-4275 against SnoWizard on November 9, 2010.[158] SnoWizard filed an answer and asserted counterclaims against Southern Snow on March 16, 2011.[159] On July 11, 2011, the parties agreed to dismiss all claims in Case No. 10-4275 without prejudice and reassert them in Case No. 11-

---

[154] Second Amended Compl. at ¶¶ 237–241.

[155] *Id.* at ¶¶ 74–98.

[156] *Id.* at ¶¶ 70, 239.

[157] Normally, a court must limit its inquiry on a motion to dismiss to the facts alleged in the complaint, any documents attached to it, and any documents incorporated within it. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). However, on a motion to dismiss, a court also may consider matters of which they make take judicial notice. *Id.* at 1017–18. Such matters include docket entries. *See Brown v. Lippard*, 350 F. App'x 879, 882 n.2 (5th Cir. 2009).

[158] *Southern Snow Mfg. Co., Inc. v. SnoWizard, Inc.*, Case No. 10-4275 at Rec. Doc. 1.

[159] *Id.* at Rec. Doc. 17.

1499.[160] District Court Judge Jay Zainey ordered the case dismissed without prejudice on the same day.[161]

Case No. 10-4275 was not adjudicated on its merits; the parties instead agreed to dismiss their claims and reassert them in one of the many other cases that have spawned from this dispute. Of the two counterclaims SnoWizard asserted against Southern Snow in Case No. 10-4275—for misappropriation of the trademark SnoWizard[162] and for patent infringement of U.S. Patent No. 7,536,871 ("Icemaker with Improved Cam Assembly"),[163] SnoWizard chose to only reassert the second one in Case No. 11-1499. In other words, no decision on the merits was made regarding the first counterclaim, the trademark infringement claim, in Case No. 10-4275. As such, it cannot be the basis for a malicious prosecution claim. Agreeing to dismiss a case without prejudice in order to allow it to be reasserted later—as happened in Case No. 10-4275—cannot be said to be a conclusion on the merits. As the Fifth Circuit has explained, a dismissal "'without prejudice' indicates that the suit is dismissed without a decision on the merits and is not conclusive of the rights of the parties."[164] As for the patent infringement claim, the jury found for SnoWizard when SnoWizard re-alleged it in Case No. 11-1499.[165]

Plaintiffs therefore cannot pursue a claim for malicious prosecution based upon SnoWizard's claims in Case No. 10-4275 because under Louisiana law malicious prosecution requires six elements, including bona fide termination in the prior case in favor of the present

---

[160] *Id.* at Rec. Doc. 52 at 2.

[161] *Id.*

[162] *Id.* at Rec. Doc. 17.

[163] *Id.* at Rec. Doc. 34.

[164] *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194 (5th Cir. 2011) (citation and internal quotation marks omitted).

[165] Case No. 11-1499 at Rec. Doc. 12 at 10.

plaintiff.[166] Neither cause of action brought by SnoWizard in Case No. 10-4275 can be said to have resulted in a bona fide termination in Plaintiffs' favor. Either the claim was voluntarily dismissed before the Court could consider its merits, as in the case of the trademark infringement claim, or the jury ultimately found in favor of SnoWizard, as in the case of the patent infringement claim. Accordingly, because "Count 9"—brought against SnoWizard and Sciortino—and "Count 12"—brought against Morris and Tolar for conspiracy to maliciously prosecute—derive solely from the alleged malicious prosecution of Case No. 10-4275, which was either not decided on the merits or not decided in Plaintiffs' favor, each of these claims must be dismissed for failure to state a required element of the tort of malicious prosecution.

### 2. Case No. 11-0515

In "Count 10" and "Count 13," Plaintiffs raise another state law claim for malicious prosecution and conspiracy to maliciously prosecute. These claims derive solely from Case No. 11-0515.[167] SnoWizard initiated that case against Raggs Supply LP and others on March 3, 2011.[168] In that case, SnoWizard accused those defendants of "infringement and dilution of the SNOWIZARD trademark, and for defamation."[169]

Several Louisiana Courts of Appeal have held that a settlement "cannot serve as the basis for a malicious prosecution" claim.[170] However, even if a settlement could serve as the basis for

---

[166] *St. Paul Mercury Ins. Co.*, 224 F.3d at 435.

[167] Second Amended Compl. at ¶¶ 359–60, 365–66.

[168] *SnoWizard, Inc. v. Doty, et al.*, 11-0515, Rec. Doc. 1. This case initially was before District Court Judge Ivan Lemelle, who reassigned it to this Court on October 31, 2011. *See id.*; Rec. Doc. 64.

[169] Second Amended Compl. at ¶ 247.

[170] *See Ulmer v. Frisard*, 06-377 (La. App. 5 Cir. 10/31/06); 945 So. 2d 85, 88; *see also*, *Lees v. Smith*, 363 So. 2d 974, 978 (La. Ct. App. 1978) ("The trial court erred in allowing Lees' settlement with Smith's insurer to be a 'bona fide termination in favor of the present plaintiff.'"); *but see Waste Mgmt. of Louisiana, L.L.C. v. Parish of Jefferson ex rel. Jefferson Parish Council*, 947 F. Supp. 2d 648, 656–57 (E.D. La. 2013) (allowing malicious prosecution lawsuit to proceed despite initial lawsuit being voluntarily dismissed

a malicious prosecution claim, nothing here can be said to reflect a termination favorable to Defendant Raggs Supply. As Plaintiffs admitted in the Second Amended Complaint, Raggs Supply paid SnoWizard $15,000 to settle Case No. 11-0515.[171] Additionally, as part of the settlement, Raggs Supply "agreed to language for a notice to be sent to customers who purchased SnoWizard quarts and half-gallons from Raggs from 2006 through 2010."[172] That language read:

> Raggs Supply LP and SnoWizard, Inc., are sending this notice to customers who have purchased quarts or half-gallons of SnoWizard snowball flavor concentrate from Raggs in the past. From 1991 until June 2010, Raggs distributed SnoWizard snowball flavor concentrates purchased at wholesale from SnoWizard. During that time, quarts and half-gallons of SnoWizard flavor concentrates sold by Raggs were re-packaged into quart and half-gallon bottles by Raggs from gallons purchased from SnoWizard. Raggs placed SnoWizard labels printed by Raggs on those re-packaged bottles. The re-packaging and labeling by Raggs were done without SnoWizard's prior knowledge or approval.[173]

The Record does not reflect the favorable termination necessary to support a malicious prosecution cause of action under Louisiana law, even if Louisiana law allows settlements or voluntary dismissals to constitute "bona fide terminations" in certain circumstances. Accordingly, "Count 10"—brought against SnoWizard and Sciortino—and "Count 13"—brought against Morris and Toler for conspiracy to maliciously prosecute Case No. 11-0515—must be dismissed for failure to state a claim.

---

"[b]ecause . . . [plaintiff in the initial lawsuit] publicly and judicially acknowledged that its . . . claim lacked merit").

[171] Second Amended Compl. at ¶¶ 277–78.

[172] Case No. 11-0515 at Rec. Doc. 217 at 1.

[173] *Id.* This document in the Record reflects the final language proposed by Defendant Raggs Supply. The final letter later sent to Magistrate Judge Sally Shusan for review may have contained slight variations from this version.

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant SnoWizard's Motion to Dismiss Second Amended Complaint Under Rule 12(b)(6)[174] is **GRANTED**. Plaintiffs' self-styled "Counts 1–8" are dismissed against SnoWizard and Sciortino on the basis of res judicata. Furthermore, "Counts 9 and 10," each involving malicious prosecution, are dismissed because Plaintiffs cannot show a bona fide termination on the merits in the underlying lawsuits.  Likewise, all claims against Defendants Morris and Tolar are dismissed. Regarding the RICO claim against them, Plaintiffs have failed to allege an underlying predicate RICO act to support the cause of action. Regarding "Count 11," Plaintiffs fail to allege any facts indicating that Morris and Tolar conspired to help SnoWizard and Sciortino commit fraud or obstruction of justice. Finally, "Counts 11 and 12," which accuse Morris and Tolar of conspiring with SnoWizard and Sciortino to malicious prosecute Plaintiffs, must also be dismissed. As noted, neither of the lawsuits in question can be said to have terminated in Plaintiffs' favor. Accordingly, as Plaintiffs have now had three opportunities to successfully plead their claims, Plaintiffs claims are **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 12(b)(6).

**NEW ORLEANS, LOUISIANA**, this ___27th___ day of March, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[174] Rec. Doc. 62.