## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SNOW INGREDIENTS, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-1412** |
| **SNOWIZARD, INC., ET AL.** | **SECTION: "G" (1)** |

## ORDER AND REASONS

Before the Court is Defendants' Second Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11[1] filed by Defendants SnoWizard, Inc., Ronald R. Sciortino, Jack E. Morris, and Kenneth L. Tolar (collectively, "Defendants"), who pursuant to Rule 11 of the Federal Rules of Civil Procedure move for costs against Mark Andrews, counsel of record for Plaintiffs Snow Ingredients, Inc., Simeon, Inc., Southern Snow Mfg. Co., Inc., Parasol Flavors, LLC, Raggs Supply, LP, and Special T Ice Co., Inc. in the above-captioned matter. Defendants contend that Andrews has presented to this Court a pleading (Rec. Doc. 12, "First Amended Complaint") setting forth a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") that is not warranted by existing law or by any nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.[2] Defendants also argue that Andrews filed the First Amended Complaint for improper purposes.[3] The Court has considered the First Amended Complaint, the parties' respective briefs, the record, and the applicable law. For the reasons set forth below, the Court will deny the motion.

---

[1] Rec. Doc. 67.

[2] Rec. Doc. 67-1 at 2.

[3] *Id.*

1

# I.  Background

## A. Procedural Background

Plaintiff filed this action against Defendants in the Eastern District of Louisiana on June 1, 2012, and it was transferred to this section, Section G, because it is related to cases already pending in this Court in consolidated Civil Action No. 06-9170.[4] In that case, Defendants answered the complaint on July 19, 2012.[5] The next day, Plaintiffs filed the First Amended Complaint.[6] On August 22, 2012, Defendants filed the Second Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11.[7] Because Civil Action No. 06-9170 was pending, the Court denied Defendants' Second Motion for Sanctions without prejudice to be reurged if necessary after the completion of trial in Civil Action No. 06-9170. With leave of Court, Plaintiffs filed a Second Amended and Supplemented Complaint ("Second Amended Complaint") on February 4, 2013.[8]  On March 12, 2013, Defendants filed a Motion to Dismiss Second Amended Complaint under Rule 12(b)(6).[9] Plaintiffs filed an opposition to that motion on April 2, 2013.[10] On June 21, 2013, Defendants filed a motion entitled Third Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11.[11] Several days later, on June 26,

---

[4] *See* Rec. Docs. 1, 8.

[5] Rec. Doc. 11.

[6] Rec. Doc. 12.

[7] Rec. Doc. 21. The first motion for sanctions arose in the context of Case No. 06-9170. *See* Case No. 06-9170 at Rec. Doc. 410.

[8] Rec. Doc. 53.

[9] Rec. Doc. 62.

[10] Rec. Doc. 64.

[11] Rec. Doc. 66.

2013, Defendants refiled the instant motion to be reurged, the Second Motion for Sanctions Against Plaintiffs' Counsel Pursuant to Rule 11.[12]

## B. Factual Background

Although the above-captioned case was not consolidated with Civil Actions Nos. 06-9170, 09-3394, 10791, and 11-1499 (the "Consolidated Cases"), the factual background of this case is deeply intertwined with the Consolidated Cases. All parties, except for the attorney-defendants, Jack Morris and Kenneth Tolar, are involved in the sale, distribution, or manufacturer of snowballs, snowball flavor concentrates, and ice-shaving machines.

Between 2003 and 2008, SnoWizard began to acquire and enforce various patent and trademark rights, and this litigation ensued when Southern Snow first filed suit in 2006. In the consolidated cases, the claims and counterclaims predominantly covered the scope, existence, and ownership of certain patents and trademarks and the fairness of the parties' business practices. Throughout the litigation, Plaintiffs have claimed that Defendants have fraudulently and unfairly procured and enforced their claimed intellectual property rights. After significant motion practice over the course of multiple years, the remaining claims were submitted to a jury in an eight-day trial. On February 28, 2013, the jury returned a verdict, and the Court entered a judgment on the basis of the jury verdict on March 5, 2013.[13]

According to the First Amended Complaint in this case, "Defendant SnoWizard is attempting to manipulate the snowball market through a scheme to assert exclusive monopoly rights to sell products in that market, threatening and bringing litigation to force withdrawal of legitimate products and producers from the market based on fraudulently asserted and obtained

---

[12] Rec. Doc. 67.

[13] Civ. Action No. 06-9170, Rec. Doc. 665.

patent and trademark rights and making material misrepresentations to the USPTO in obtaining, and to the Court in asserting, the bogus patent and trademark rights."[14] Plaintiffs claim that SnoWizard's attorneys Kenneth Tolar and Jack Morris have conspired with SnoWizard and Sciortino to acquire, maintain, and enforce bogus patents and trademark registrations as a means of asserting unwarranted monopoly rights, through abusive litigation and obstruction of justice.[15]

In particular, regarding the pertinent RICO claims in the First Amended Complaint, Plaintiffs allege the following:

That SnoWizard, Sciortino, Tolar, and Morris engaged in a litigation scheme that constitutes obstruction of justice and extortion, all in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*,[16] and that in furtherance of this litigation scheme, SnoWizard has made willful false statements by mail and electronic means in violation of federal mail and wire fraud statutes.[17]

Defendants seek sanctions for the RICO claims, alleging that the claims were frivolous "insofar as no reasonable attorney would believe that the alleged acts of defendants sued upon were capable of satisfying the criminal act predicate requirement of RICO."[18] Defendants also seek sanctions because "the allegations, purported RICO claim, and other purported counts therein are being presented to harass and retaliate against defendants, to cause unnecessary delay

---

[14] Rec. Doc. 12 at ¶ 17.

[15] *Id.* at ¶ 76–77.

[16] *Id.* at ¶¶ 86–88.

[17] *Id.* at ¶¶ 90–227.

[18] Rec. Doc. 67-1 at 5.

in this and other pending litigation involving plaintiffs and defendants, and to needlessly increase

the cost to defendants of this and other pending litigation."[19]

## II. Parties' Arguments

### A. Defendants' Arguments in Support of Sanctions

#### 1. Plaintiffs' RICO Claims Merit Sanctions Because There was No Predicate Act

Defendants argue that Plaintiffs' RICO claims here are "not warranted by existing law or

by any nonfrivolous argument for extending, modifying, or reversing existing law or for

establishing new law."[20] Defendants assert that "[N]o reasonable attorney would believe the

alleged acts of defendants sued upon were capable of satisfying the predicate act requirements of

RICO, even if Mr. Andrews himself believed otherwise."[21] According to Defendants:

> Mr. Andrews has not alleged—and no reasonable attorney would believe [the
> First Amended Complaint] alleges—any predicate criminal acts. For this reason
> alone, Mr. Andrews' RICO claims and legal contentions manifestly are not
> warranted by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new law, and therefore
> they are in violation of Rule 11(b)(2).[22]

Defendants maintain that Andrews's allegations of mail and wire fraud are "frivolous."[23]

According to Defendants, this Court previously held in Civil Action 06-9170 that as a matter of

law not a single one of SnoWizard's assertions of trademark rights under federal, state, and/or

common law in at least twenty-two names for snowball flavoring concentrates was literally

false.[24] Defendants conclude that, because of this it is not possible that "SnoWizard's mere

---

[19] *Id.* at 2.

[20] Rec. Doc. 67-1 at 2.

[21] *Id.* at 5.

[22] Rec. Doc. 21-1 at 14 (internal quotation marks omitted).

[23] *Id.* at 15.

[24] *Id.* at 16 (citing Case No. 06-9170, Rec. Doc. 332 at 32).

assertion of trademark rights evidence intent to defraud by false or fraudulent representations as required by the mail fraud and wire fraud statutes."[25] Furthermore, Defendants argue that under 35 U.S.C. § 282 and 15 U.S.C. § 1057(b) a trademark shall be presumed to be valid.[26] As a result, "SnoWizard's representations of the existence of patents . . . cannot under any circumstances evidence any intent to defraud by false or fraudulent representations as required by the mail fraud and wire fraud statutes either."[27]

Based on several cases from outside the Fifth Circuit, Defendants argue that, in any event, "The law is clear that inequitable conduct before the [USPTO] cannot qualify as an act of mail fraud . . . for purposes of the predicate act requirement [of RICO]."[28] Similarly, Defendants also maintain that alleged infringement of a trademark—as Plaintiffs allege here—cannot qualify as the underlying predicate act that supports a RICO cause of action.[29] Again, citing to authority from outside the Fifth Circuit, Defendants assert that "federal courts consistently have rejected attempts by RICO plaintiffs to transform ordinary infringement claims into criminal predicate acts of mail or wire fraud for purposes of RICO."[30] From this, Defendants conclude:

> [C]onsidering the conspicuous absence of any authority whatsoever supporting Mr. Andrews' legal contentions that trademark infringement can constitute mail and wire fraud, those legal contentions are frivolous and violate Rule 11. Otherwise, every patent and trademark infringer would be a criminal, and every patent and trademark infringement case potentially would be a RICO case.

---

[25] *Id.* (internal quotation marks omitted).

[26] *Id.* at 16–17.

[27] *Id.* at 17 (internal quotation marks omitted).

[28] *Id.* at 17 (quoting *Medina v. Bauer*, 2004 WL 136636 (S.D.N.Y. 2004)) (quoting *Semiconductor Energy Lab. Co. v. Samsung Elec. Co.,* 204 F.3d 1368, 1380 (Fed. Cir. 2000)) (internal quotation marks omitted).

[29] *Id.* at 18.

[30] *Id.*

As were Plaintiffs' claims for mail and wire fraud, Defendant calls Plaintiffs allegations that defendants engaged in extortion and obstruction of justice "frivolous and sanctionable."[31] Specifically, Defendants argue that their conduct—sending a total of four cease-and-desist letters over five years and filing counter-claims against or suing Plaintiffs for patent and trademark infringement and unfair competition cannot support obstruction of justice or extortion.[32] Defendants maintain that these claims are frivolous because "[n]owhere in the [First Amended Complaint] does Mr. Andrews allege that defendants ever employed any wrongful use of actual or threatened force, violence, or fear against anyone within the meaning of the federal extortion statute, 18 U.S.C. § 1951(b)(2) . . . ."[33] Likewise, the obstruction of justice claim is meritless. According to Defendants, Defendants did not "corruptly, or by threats or force, or by any threatening letter or communication endeavored to influence, intimidate, or impede anyone or to influence, obstruct, or impede the due administration of justice within the meaning of the federal obstruction of justice statute, 18 U.S.C. § 1503(a)."[34] Defendants conclude that, "The allegations regarding cease and desist letters, a lawsuit, and counter-claims therefore do not even begin to establish the requisite predicate criminal acts under RICO, and like Mr. Andrews' other allegations, they are objectively unreasonable and patently frivolous."[35]

Finally, Defendants note that the remaining claim in the First Amended Complaint, fraudulent assertion of ETL certification after lapse, also cannot support a RICO cause of action

---

[31] *Id.* at 19.

[32] *Id.*

[33] *Id.* at 20.

[34] *Id.* at 20–21.

[35] *Id.* at 21.

because the one incident standing alone would not establish a pattern of racketeering activity, as the RICO statute requires.[36]

### 2. Andrews Filed the Second Amended Complaint for Improper Purposes

Defendants further argue that "the record evidence also establishes that Andrews" brought the Second Amended Complaint for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation."[37] Defendants maintain that "the record evidence establishes that Andrews filed the [First Amended Complaint] . . . in order to harass and retaliate against [Defendants], to cause unnecessary delay in this and other pending so-called 'collateral litigation,' and to needlessly increase the cost to SnoWizard of this and the other pending litigation."[38]

Specifically, Defendants speculate that Andrews is "retaliating against SnoWizard" the same way Andrews retaliated by filing a lawsuit against in it Civil Action 10-791 "a week after Judge Lemmon gutted [Plaintiffs'] claims in Civil Action 09-3394 . . . and just as Andrews retaliated against SnoWizard by filing the frivolous and duplicative first RICO complaint in Civil Action 11-1499 soon after Judge Zainey dismissed the vast majority of [Plaintiffs'] remaining claims . . . ."[39] Defendants allege that "Andrews has now retaliated against defendants by filing the frivolous and duplicative [First Amended Complaint] herein on July 20, 2012 exactly four weeks after the Louisiana district court denied his special motion to strike SnoWizard's petition for defamation and unfair trade practices against him on June 20, 2012."[40]

---

[36] *Id.*

[37] *Id.* at 22 (quoting Fed. R. Civ. P. 11(b)(1)).

[38] *Id.*

[39] *Id.*

[40] *Id.* (citations omitted).

Defendants conclude that even though "[a]ny reasonable attorney would know the [First Amended Complaint] . . . is legally insupportable . . . [Andrews] filed it anyway because that is how he routinely exacts revenge against defendants whenever they prevail against his malicious and costly, but frivolous and ineffectual, bullying tactics."[41] According to Defendants, "[T]he only conceivable reason Mr. Andrews would file the frivolous and duplicative [First Amended Complaint] is to retaliate against and harass defendants, to vexatiously multiply and unnecessarily delay the pending litigation, and to increase SnoWizard's costs."[42] Defendants conclude that, "In short, ample objective record evidence establishes that Mr. Andrews' frivolous and duplicative [First Amended Complaint] is being presented to harass and retaliate against defendants, to cause unnecessary delay in this and the other pending litigation, and to needlessly increase the cost to SnoWizard of this and the other pending litigation in violation of Rule 11(b)(1)."[43]

### B. Andrews's Arguments in Opposition

Andrews argues that "[t]here is nothing frivolous about this action or the related actions that came before [and] . . . Plaintiffs' good-faith basis in bringing this litigation is supported by the detailed Complaint itself."[44] Regarding Plaintiffs' allegations that the First Amended Complaint is not supported by existing law, Andrews argues that "SnoWizard quotes some out-of-circuit cases saying inequitable behavior before the USPTO is categorically incapable of supporting any fraud claim by a private party, but all of those cases were mooted by *Bridge* in 2008 . . . ."

---

[41] *Id.* at 23.

[42] *Id.* at 24.

[43] *Id.*

[44] Rec. Doc. 22 at 1.

As for Andrews's alleged improper purpose, Andrews claims that "there has been none," and that it has been SnoWizard—not Plaintiffs—who have held up resolution of the matter.[45] Andrews points to SnoWizard's motion in March 2012 to reopen the pleadings in 11-1499 by adding a late-filed counterclaim and "motion for appeal/review" after SnoWizard's motion to reopen the pleadings was denied.[46] Andrews further alleges that it was "SnoWizard—not the Plaintiffs—[who] moved on 28 June 2012 for a status conference in Case No. 11-1499 asserting 'it is not procedurally, strategically or economically feasible for the parties to proceed with discovery' and requesting 'that a status conference be scheduled at the Court's convenience for the purpose of reassessing the current scheduling deadlines and trial date.'"[47]

Andrews further argues that Plaintiffs have made no misstatements of facts[48] and that Plaintiffs have made no misstatements of law.[49] Regarding Plaintiffs' RICO claims, Andrews argues that *Bridge v. Phoenix Bond & Indemnity Co.*[50] overruled "the single Federal-Circuit case and the few New York district-court cases SnoWizard relies on for the proposition that fraud upon the USPTO cannot support a civil-RICO violation."[51] As such, according to Andrews, "SnoWizard's cases are no longer pertinent law."[52]

Furthermore, Andrews argues that none of Plaintiffs' claims in this action are barred by res judicata because there was no final judgment on those claims in the earlier cases, and that

---

[45] *Id.* at 2.

[46] *Id.*

[47] *Id.* (citations omitted).

[48] *Id.*

[49] *Id.* at 3.

[50] 553 U.S. 639 (2008).

[51] *Id.* at 3.

[52] *Id.*

even if the claims were barred by res judicata, that is irrelevant because Plaintiffs did not re-file any of those claims.[53] Andrews contends that Judge Zainey's order on "literal falsity" was simply an interlocutory ruling.[54] Accordingly, Andrews concludes that "SnoWizard's attempt to use an interlocutory ruling about *literal falsity without fraudulent intent* as something that controls any question of *fraud* is wrong on all levels. The interlocutory ruling only controls what it says it controls, and no ruling that explicitly excludes consideration of fraud can control a later question of fraud."[55]

Regarding Defendants' contention that patents are presumably valid, Andrews argues that, "Federal patent law does not preempt federal or state unfair-competition, antitrust, or civil-RICO claims where those claims include additional elements not found in the federal patent-law cause of action."[56] As Andrews sees it, "[T]he granting of the patents does not confer any immunity for anti-competitive misuse of the patents, or inequitable conduct used to obtain the patents, and the Plaintiffs' claims are not preempted [by federal patent law]."[57]

Andrews also takes issue with the caselaw to which Defendants cite. Andrews maintains that Defendants omitted critical portions of quoted sentences or otherwise misconstrued the holdings of these cases.[58]

Regarding Defendants' argument that the cause of action for ETL certification cannot alone support a RICO cause of action, Andrews argues that the ETL certification represents

---

[53] *Id.* at 4

[54] *Id.*

[55] *Id.*

[56] *Id.* at 5.

[57] *Id.*

[58] *Id.* at 6–7.

simply one instance of repeated instances of fraud pleaded in the First Amended Complaint.[59] According to Andrews, the ETL certification cause of action was never intended to stand alone.[60]

Finally, Andrews maintains that his RICO cause of action is not frivolous because extortion and obstruction of justice, both of which were pleaded in the First Amended Complaint, are actionable under the RICO statute.[61] For this proposition, Andrews quotes a portion of *Feld Entertainment, Inc. v. American Society for the Prevention of Cruelty to Animals*[62] in which the court states, "[W]here additional allegations of extortion or some other pattern of racketeering activity' are involved, courts have found that alleged mail and wire fraud arising out of malicious prosecution or abuse of process could be Rico predicate acts."[63] Andrews quotes from another portion of *Feld* as well: "Although obstruction of justice charges are not often applied to lies or misrepresentations in the course of civil discovery, courts have permitted parties to pursue it under certain circumstances."[64] Based on this, Andrews argues that "Plaintiffs' motivation is to vindicate the rights that were violated every time that SnoWizard and its attorneys made material misrepresentations in adjudicatory proceedings in this Court and before the USPTO administrative agency."[65] Andrews also points out that "the filing of the

---

[59] *Id.* at 10.

[60] *Id.*

[61] *Id.* at 14–15.

[62] 873 F.Supp.2d 288 (D.D.C. 2012).

[63] Rec. Doc. 22 at 15 (quoting *Feld Entertainment v. ASPCA*, correct citation not given) (citations and internal quotation marks omitted).

   *Id.* (quoting *Feld Entertainment v. ASPCA*, correct citation not given) (citations and internal quotation marks omitted).

[65] *Id.*

[current] lawsuit has caused no delay in the other, earlier lawsuits, which have already proceeded to trial . . . ."[66]

Andrews concludes that,

 Plaintiffs' good-faith basis in the law is supported by [*Feld Entertainment*] and the several cases cited by the District of Columbia court, including a seminal Supreme Court case [*California Motor Transport Co. v. Trucking Unlimited*[67]], and the Plaintiffs' good-faith basis in the facts is supported by the pinpoint citations to evidence that is in the public record, and by precise identification of dates, documents, and declarants, with detailed explanations of why each misrepresentation was material and fraudulent.[68]

### III. Law and Analysis

#### A.  Sanctions Under Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11(b) provides in pertinent part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or *other paper,* an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances,*—

(1) *it is not being presented for any improper purpose, such as to harass* or to cause unnecessary delay or needless increase in the cost of litigation; [and]

(2) the claims, defenses, and other *legal contentions therein are warranted by* existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .[69]

Rule 11 continues that, "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on

---

[66] *Id.* at 3.

[67] 404 U.S. 508, 512–13 (1972).

[68] *Id.* at 16.

[69] *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 802 (5th Cir. 2003) (en banc).

13

any attorney, law firm, or party that violated the rule or is responsible for the violation."[70] "Subparts (b)(1) and (2) of Rule 11 provide independent bases for sanctions."[71] In other words, under Rule 11, each of the two obligations mentioned above must be satisfied; "violation of either justifies sanctions."[72] Stated otherwise, an attorney "violates Rule 11 if he fails to conduct a reasonable inquiry into the law and facts underlying his motion, or if he makes a motion to delay, harass or increase the costs of litigation."[73]

"In determining compliance *vel non* with each obligation, the standard under which an attorney is measured is an objective, not subjective, standard of reasonableness under the circumstances."[74] "An attorney's good faith is . . . [not] enough to protect him from Rule 11 sanctions."[75] Finally, "[c]ompliance with an attorney's affirmative duties"—whether it be establishing a sufficient legal basis or eschewing an improper motive—"is measured as of the time that the document is signed."[76]

"In deciding whether a reasonable inquiry into the law has been made a district court may consider how much time the attorney had to prepare the document; whether the document contains a plausible view of the law; whether the document is filed by an attorney or a *pro se* litigant; and the complexity of the legal and factual issues in question."[77]

---

[70] Fed. R. Civ. P. 11(c)(1).

[71] *Whitehead*, 332 F.3d at 802.

[72] *Id.*

[73] *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999).

[74] *Whitehead*, 332 F.3d at 802 (citations and internal quotation marks omitted); *see also Thomas v. Capital Sec. Servs., Inc.*, 812 F.2d 984, 988 (5th Cir. 1987) ("Rule 11 compliance is measured generally by an objective standard of attorney performance.").

[75] *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir. 1994).

[76] *Id.*

[77] *Thomas*, 812 F.2d at 988.

Likewise, in deciding whether a filing was made for an improper purpose, a court is to determine whether "it is objectively ascertainable that an attorney submitted a paper to the court for an improper purpose."[78] Because of the objective inquiry, a district court can read an improper motive into a document well-grounded in fact and law under exceptional circumstances.[79] The key is whether "the improper purpose is objectively ascertainable."[80]

### B. Elements of a RICO Claim

In *St. Germain v. Howard*, the Fifth Circuit explained a RICO violation as such:

> Claims under RICO, 18 U.S.C. § 1962, have three common elements: (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity. The predicate acts can be either state or federal crimes.[81]

Specifically, RICO defines "racketeering activity" in pertinent part "as any act which is indictable under any of the following provisions of Title 18 United States Code . . . section 1341 [mail fraud], section 1343 [wire fraud], . . . section 1503 [obstruction of justice], . . . section 1951 [extortion] . . . ."[82]

### C. Whether Sanctions are Warranted Against Andrews for Violating Rule 11

#### 1. Whether Plaintiffs' RICO Claims were Insufficiently Grounded in Law

In Plaintiffs' First Amended Complaint that Andrews signed as counsel of record, Plaintiffs allege that Defendants perpetrated a series of fraudulent acts by mail and wire,

---

[78] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580 (5th Cir. 2008).

[79] *Id.*

[80] *Id.* at 580–81.

[81] 556 F.3d 261, 263 (5th Cir. 2009).

[82] *See* 18 U.S.C. § 1961(1).

obstructed justice, and engaged in extortion. This conduct, according to Plaintiffs constitutes "racketeering activity" that qualifies as underlying predicate acts for a RICO claim.

As set forth in 18 U.S.C. § 1961(1), mail fraud, as defined by 18 U.S.C. § 1341, wire fraud, as defined by 18 U.S.C. § 1343, obstruction of justice, as defined by 18 U.S.C. § 1503, and extortion, as defined by 18 U.S.C. § 1951, are among those activities that can constitute racketeering.[83] Section 1961(1) does not list a violation of 18 U.S.C. § 1505, which prohibits obstruction of justice in federal department or agency proceedings, as a predicate act.[84]

To establish a violation of section 1341, mail fraud, a party must establish the following three elements: "(1) a scheme to defraud, (2) which involves the use of the mails, (3) for the purpose of executing the scheme."[85]

To establish a violation of section 1343, wire fraud, a party must establish the following two elements: "(1) a scheme to defraud and (2) the use of, or causing the use of, wire communications in furtherance of the scheme."[86]

To establish a violation of section 1503, obstruction of justice, a party must establish the following three elements: "(1) that a judicial proceeding was pending; (2) that the defendant had knowledge of the judicial proceeding; and (3) that the defendant acted corruptly with the specific intent to influence, obstruct, or impede that judicial proceeding in its due administration of

---

[83] *See* 18 U.S.C. § 1961(1)(B).

[84] *Id.*

[85] *United States v. Gray*, 96 F.3d 769, 773 (5th Cir. 1996) (citation omitted).

[86] *Id.*

justice."[87] Moreover, "the [corrupt] act must have a relationship in time, causation, or logic with the judicial proceeding."[88]

To establish a violation of section 1951, extortion, a party must establish the following two elements: "(1) interference with commerce, and (2) extortion."[89] Section 1951(b) goes on to define extortion as: "the obtaining of property from another, with his consent, induced . . . under color of official right."[90]

Defendants maintain that any reasonable attorney would have known that the alleged conduct cannot constitute a predicate criminal act for RICO purposes.[91] For this reason, according to Defendants, "Andrews' [sic] RICO claims and legal contentions manifestly are not 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law,' and therefore they are in violation of Rule 11(b)(2)."[92]

In *St. Germain*, the Fifth Circuit affirmed the district court's dismissal of a RICO complaint because it failed to allege the requisite predicate criminal acts:

> In their complaint, Appellants allege that the predicate acts committed by Appellees were mail and wire fraud.  However, the district court found, and Appellants acknowledged, that the "patterns of racketeering activity" they allege are at worst violations of the rules of professional responsibility. Because Appellants have not alleged the requisite predicate *criminal* acts under RICO, they have not met the pleading standard of Rule 12(b)(6).[93]

---

[87] *United States v. Richardson*, 676 F.3d 491, 501–02 (5th Cir. 2012) (citation and internal quotation marks omitted).

[88] *Id.* (citing *United States v. Aguilar*, 515 U.S. 593, 599 (1995)).

[89] *United States v. Thompson*, 647 F.3d 180, 184 (5th Cir. 2011).

[90] 18 U.S.C. § 1951(b)(2).

[91] Rec. Doc. 21-1 at 14.

[92] *Id* (quoting Fed. R. Civ. P. 11(b)(2)).

[93] 556 F.3d 261, 263.

*St. Germain* is distinguishable from this case. The conduct at issue in *St. Germain* involved alleged violations of the rules of professional conduct and not the same violations of law at issue here. Specifically, in *St. Germain*, the plaintiffs alleged that the defendants had violated multiple rules of the Louisiana Rules of Professional Conduct, including: (1) using multiple business identities in the course of their legal representation of the plaintiffs; (2) charging the plaintiffs non-refundable minimum fees in advance, and performing unauthorized and/or overbilled work; and (3) engaging in unauthorized sharing of fees with parties not identified in the contract between the plaintiffs and defendants.[94] *St. Germain* is distinguishable because it involved allegations of violations of the rules of professional conduct, not the same type of violations of law involved here.

The Fifth Circuit has not expressly addressed the issue of whether the alleged conduct here, which is criminal under several federal statutes, can qualify as predicate acts for RICO purposes. Defendants are apparently aware that no Fifth Circuit case directly addresses the question of whether the activity alleged here can be the predicate crime for a RICO action, as the Defendants cite to several cases outside the Fifth Circuit for this proposition.[95]

Moreover, while the Federal Circuit decision in *Semiconductor Energy Laboratory Company v. Samsung Electronics Company*,[96] to which Defendants cite, does represent binding authority in patent and trademark cases, Andrews has raised a colorable argument that the

---

[94] *Id.* at 263 n. 1 (5th Cir. 2009).

[95] *Id.* at 13–14.

[96] 204 F.3d 1368 (Fed. Cir. 2000).

Supreme Court's decision in *Bridge v. Phoenix Bond & Indemnity Co.*[97] overruled *Semiconductor Energy*.

Like Defendants, Andrews draws on authority from outside of the Fifth Circuit. He cites to *Feld Entertainment, Inc. v. American Society for the Prevention of Cruelty to Animals*[98] for the proposition that mail and wire fraud and obstruction of justice are sufficient criminal acts to serve as predicate acts for a RICO claim. Like *St. Germain*, *Feld Entertainment* is distinguishable because the allegation of criminal activity there—bribery of a witness—is not at issue here.

Plaintiffs' allegations of engaging in "sham" litigation and making material misstatements in court and to government officials are extremely serious and could, in certain contexts, constitute crimes—i.e. mail fraud, wire fraud, obstruction of justice, or extortion. Therefore, it cannot be said that Plaintiffs' RICO claims were so misguided as to support sanctions, even if ultimately the alleged acts do not support a violation of RICO. This is especially true when one considers that there is no Fifth Circuit case on point to which Andrews could have looked for guidance. Thus, Defendants have failed to show that sanctions are warranted against Andrews for bringing a RICO claim against Defendants.

---

[97] 553 U.S. 639 (2008).

[98] 873 F.Supp.2d 288 (D.D.C. 2012).

### 2. *Whether Andrews Had an Improper Purpose in Filing the Second Amended Complaint*

Even if Plaintiffs' complaint was sufficiently grounded in law, Andrews can still be sanctioned if he filed the complaint for an improper purpose.[99] Despite Defendants' assertions to the contrary, there is no objective evidence that Andrews filed the First Amended Complaint for an improper purpose. Notably, Plaintiffs argue that this case is based on new transactions and occurrences that were not at issue in the Consolidated Cases.[100] Not all of Plaintiffs' complained-of conduct was previously litigated in the Consolidated Cases; for example, Plaintiffs allege that SnoWizard made false material statements to the USPTO in November 2003, several years before the facts litigated in the Consolidated Cases occurred.[101] Plaintiffs also allege that SnoWizard made false material statements to the USPTO in November 2011, seven months after the pleadings closed in the Consolidated Cases.[102] Thus, the objective evidence does not support a clear finding that Andrews filed the Second Amended Complaint simply to "retaliate," as Defendants claim. It is plausible that Andrews filed the lawsuit simply because there remained unlitigated claims with possible merit. Accordingly, the objective evidence here is insufficient to support a finding that Andrews acted out of improper motive. Defendants have failed to establish that Andrews acted to "exact[] revenge."[103] Therefore, Defendants' motion for sanctions on this ground must likewise fail.

---

[99] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 577 (5th Cir. 2008) ("Under the current version, courts may in rare circumstances sanction parties for pleadings like those here that, although having plausible legal theories based in fact, have an underlying improper purpose.").

[100] Rec. Doc. 22 at 10–11.

[101] Rec. Doc. 12 at ¶ 193.

[102] *Id.* at 10.

[103] *Id.* at 21-1 at 23.

## **V. Conclusion**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Second Motion for Sanctions Against

Plaintiffs' Counsel Pursuant to Rule 11[104] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this ___28th___ day of March, 2014.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[104] Rec. Doc. 21.