**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

SNOW INGREDIENTS, INC., et. al.             CIVIL ACTION

VERSUS                                  CASE NO. 12-1412

SNOWIZARD, INC.                      SECTION "G"(1)

## ORDER AND REASONS

In this litigation, Snow Ingredients, Inc., Simeon, Inc., Southern Snow Manufacturing, Co., Inc., Parasol Flavors, LLC, Theodore Eisenmann, Raggs Supply LP, and Special "T" Ice Co., Inc. (collectively, "Plaintiffs") asserted an array of claims against SnoWizard, Inc., Ronald R. Sciortino, Jack E. Morris, and Kenneth L. Tolar (collectively, "Defendants") under state and federal law. The Court dismissed all of these claims with prejudice on  March 27, 2014.[1] Presently pending before the Court is Plaintiffs'  "Motion for Reconsideration Under Rule 59."[2] Having reviewed the motion, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will grant-in-part and deny-in-part the pending motion.

## I.  Background

### A. Procedural Background[3]

Plaintiffs filed this action against Defendants in the Eastern District of Louisiana on June 1, 2012, and it was transferred to this section, Section G, because it is related to cases that were already pending in this Court in consolidated Civil Action No. 06-9170.[4] Defendants answered the complaint

---

[1] Rec. Doc. 72.

[2] Rec. Doc. 76.

[3] The Procedural and Factual Backgrounds here are adapted from the Court's prior Order. Rec. Doc. 72.

[4] *See* Rec. Doc. 1; Rec. Doc. 8.

on July 19, 2012.[5] The next day, Plaintiffs filed an Amended Complaint.[6] With leave of Court, Plaintiffs filed a Second Amended and Supplemented Complaint on February 4, 2013.[7] On March 12, 2013, Defendants filed the instant Motion to Dismiss Second Amended Complaint under Rule 12(b)(6).[8] Plaintiffs opposed the motion on April 2, 2013.[9] The Court granted the motion on March 27, 2014, dismissing all of Plaintiffs' claims with prejudice.[10]

**B.    Factual Background**

Although the above-captioned case was not consolidated with Civil Actions Nos. 06-9170, 09-3394, 10-791, and 11-1499 (hereinafter, the "Consolidated Cases"), the factual background of this case is deeply intertwined with the Consolidated Cases. All parties, except for the attorney-defendants, Jack Morris and Kenneth Tolar, are involved in the sale, distribution, or manufacturer of snowballs, snowball flavor concentrates, and ice-shaving machines.

**1.    The Consolidated Cases**

**a.    Litigation in this Court**

Between 2003 and 2008, SnoWizard began to acquire and enforce various patent and trademark rights, and this litigation ensued when Southern Snow first filed suit in 2006. In the consolidated cases, the claims and counterclaims predominantly covered the scope, existence, and

---

[5] Rec. Doc. 11.

[6] Rec. Doc. 12.

[7] Rec. Doc. 53.

[8] Rec. Doc. 62.

[9]  Rec. Doc. 64.

[10] Rec. Doc. 72.

ownership of certain patents and trademarks and the fairness of the parties' business practices. Throughout the litigation, Plaintiffs in those cases ("Consolidated Plaintiffs") claimed that Defendants had fraudulently and unfairly procured and enforced their claimed intellectual property rights. After significant motion practice over the course of multiple years, the remaining claims were submitted to a jury in an eight-day trial.  On February 28, 2013, the jury returned a verdict, and the Court entered a judgment on the basis of the jury verdict on March 5, 2013.[11]

The jury found for Consolidated Plaintiffs on a single cause of action: that Plum Street Snoballs owns a  valid and enforceable trademark for the unregistered term ORCHID CREAM VANILLA and that SnoWizard used a reproduction, counterfeit, copy or colorable imitation of that trademark in a manner that was likely to cause confusion, or to cause mistake, or to deceive as to the source, origin, sponsorship, or approval of such product under Lanham Act §§ 43(a) and 35, 15 U.S.C. §§ 1125(a) and 1117.[12] With regards to this cause of action, the jury further found that SnoWizard's conduct was "unethical, oppressive, unscrupulous, or deceptive," and that Plum Street Snoballs was entitled to the costs of the action.[13] The jury rendered judgment against Consolidated Plaintiffs on all of their other causes of action[14] including additional claims involving infringement of Consolidated Plaintiffs' claimed trademarks to ORCHID CREAM VANILLA and claims involving infringement of Consolidated Plaintiffs' claimed trademarks to SNOW SWEET as well as SnoWizard's alleged fraudulent assertions of rights in the trademarks ORCHID CREAM VANILLA, SNOSWEET,

---

[11] Civ. Action No. 06-9170, Rec. Doc. 665.

[12] *Id.* at p. 3.

[13] *Id.* at p. 4.

[14] *Id.* at pp. 1–6.

SNOBALL, SNOBALL MACHINE, HURRICANE, MOUNTAIN MAPLE, BUTTER-CREAM, BUTTERED POPCORN, CAKE BATTER, CAJUN RED HOT, COOKIE DOUGH, DILL PICKLE, GEORGIA PEACH, KING CAKE, MUDSLIDE, PRALINE, and WHITE CHOCOLATE & CHIPS.[15] The jury found for Defendants on six of their eight counter-claims.[16]

In addition to the trademark claims, both Consolidated Plaintiffs and SnoWizard raised multiple claims regarding SnoWizard's patent in U.S. Patent No. 7,536,871 ("Icemaker with Improved Cam Assembly").[17] The jury found against Consolidated Plaintiffs on all of their false and invalid patent claims against SnoWizard and found for SnoWizard on most of its counterclaims, including all but one of its patent infringement claims.[18]

### b.    Appeals

On August 8, 2013, Consolidated Plaintiffs and two Counter-Defendants[19] in the Consolidated litigation filed a "Notice of Appeal to the Federal Circuit."[20] SnoWizard and Sciortino

---

[15] *Id.* at p. 5.

[16] *Id.* at pp. 6–11.

[17] *Id.* at pp. 2–11.

[18] *Id.*

[19] These were: Plum Street Snoballs, Theodore Eisenmann, Raggs Supply LP, Special T. Ice Co. Inc., Van's Snowballs, Parasol Flavors LLC, Simeon Inc., Southern Snow Mfg. Co. Inc., and Snow Ingredients, Inc., in addition to Counter-Defendants Milton G. Wendling, Jr. and Banister & Co. Inc.

[20] Civ. Action No. 06-9170, Rec. Doc. 713. Specifically, Consolidated Plaintiffs stated that their appeal addressed the Court's: (1) Order denying Plaintiffs' "Rules-50-59 motion," (Rec. Doc. 711); (2)  Order "granting-in-part Defendant's Rule-59 motion," (Rec. Doc. 709); (3) final judgment, (Rec. Doc. 665); (4) Order "that allegedly fraudulent applications for patents and trademarks do not constitute antitrust violations and may not serve as evidence of anti-competitive conduct for Plaintiff's antitrust claims under 15 U.S.C. §§ 2, 15, & 26," (Rec. Doc. 651); (5) Order "on Summary Judgment . . . dismissing Plaintiffs' claims in [C]onsolidated Case No. 11-1499," Rec. Doc. 621; (6) Order "denying Plaintiffs' motion *in limine*," (Rec. Doc. 610); (7) Order of "Rule-12 dismissal of Plaintiffs' Civil-RICO clsims," (Rec. Doc. 605); (8) Order of "Rule-12 dismissal of Plaintiffs' Civil-RICO claims," (Rec. Doc. 561); (9) Order "on Summary Judgment . . . dismissing Plaintiffs' claims re 2 trademarks," Rec. Doc. 336; (10) Order "on Summary Judgment . . . of validity of 2 trademarks," (Rec Doc. 336); (11) Order "on Summary

filed a notice of cross-appeal on September 4, 2013.[21] On that same day, Hanover Insurance

Company filed a notice of appeal from the Court's orders concluding that it had a duty to defend

SnoWizard after May 2011.[22]

On July 3, 2014, the Federal Circuit issued an Order addressing all issues raised on appeal,[23]

save for those issues related to Hanover's duty to defend SnoWizard, which was docketed separately

and is still pending.[24] In its Order, the Federal Circuit affirmed this Court on many points.[25] The

---

Judgment . . . dismissing Plaintiffs' Lanham-Act false-advertising claims," (Rec. Doc. 332); (12) Order of "Rule-12 dismissal of Plaintiff's claims under 15 U.S.C. § 1120," (Rec. Doc. 162); (13) Order "on Summary Judgment . . . dimissing Plaintiffs' claims under 15 U.S.C. § 1120 & La. R.S. 51:1405, *et seq.* (Civ. Action No. 09-3394, Rec. Doc. 56); (14) "Any other interlocutory order entered in the consolidated cases;" and (15) Any order entered after the date of this Notice of Appeal." *Id.* at pp. 1–2.

[21] Civ. Action No. 06-9170, Rec. Doc. 717. Specifically, Defendants announced an appeal of the Court's: (1) "Order and Reasons denying  SnoWizard's motion for Rule 11 sanctions against plaintiffs Claude Black and Donna Black d/b/a Plum Street Snoballs, Theodore Eisenmann, Raggs Supply, LP d/b/a Raggs Sno-Cone Supplies, Special T. Ice Co., Inc., Parasol Flavors, LLC, Simeon, Inc., Southenr Snow Mfg. Co., Inc., and Snow Ingredients, Inc. and their counsel of record Mark Edw. Andrews in Civil Action No. 11-1499," (Rec. Doc. 557); (2) "Order and Reasons granting third-party defendant Hanover Insurance Company's motion for summary judgment against SnoWizard on Hanover's duty to defend SnoWizard in Civil Action 11-1499 (Rec. Doc. 558); (3) Order denying SnoWizard's cross motion for partial summary judgment against Hanover on Hanover's duty to defend SnoWizard in Civil Action 11-1499," (Rec. Doc. 559); (4) "Order and Reasons granting Hanover's motion for summary judgment against SnoWizard terminating Hanover's duty to defend SnoWizard in Civil Actions 06-9170, 09-3394, and 10-0791 (Rec. Doc. 622); (5) "Judgment in Jury Verdict ¶ 5 finding validity and infringement by SnoWizard of plaintiff Plum Street Snoballs' trademark in ORCHID CREAM VANILLA in Civil Action 11-1499," (Rec. Doc. 665); and (6) "Order and reasons denying in part SnoWizard's motion for judgment as a matter of law and/or to alter or amend judgment on validity and infringement by SnoWizard of Plum Street Snoballs' trademark in ORCHID CREAM VANILLA in Civil Action 11-1499," (Rec.. Doc. 709). *Id.*

[22] Civ. Action No. 06-9170, Rec. Doc. 716. Specifically, Hanover Insurance Company indicated that it appealed "from those orders holding that Hanover had a continuing duty to defend SnoWizard Holdings, Inc., SnoWizard, Inc., SnoWizard Extracts, Inc., SnoWizard Supplies, Inc., and/or Ronald Sciortino (collectively, "SnoWizard") after May 9–11, 2001 (generally Rec. Doc.s 343 and 343 . . . Rec. Doc. 346 . . . and Rec. Doc. 641)."

[23] Rec. Doc. 734; 567 Fed. App'x 945 (Fed. Cir. 2014).

[24] *See* No.14-1389 (Fed. Cir.).

[25] Specifically, the Federal Circuit affirmed this Court's Judgment and Orders to the effect that: (1) the '459 patent was enforceable; (2) Southern Snow and Simeon's trademark infringement claim against SnoWizard in regards to SNOBALL was "groundless, brought in bad faith, or for purposes of harassment;" (3) SnoWizard held valid, enforceable, and infringed trademark rights in the CAJUN RED HOT, WHITE CHOCOLATE & CHIPS, MOUNTAIN MAPLE, and SNOSWEET marks; (4) SnoWizard infringed Plum Street Snoballs' trademark in ORCHID CREAM VANILLA; (5) Southern Snow, Parasol, and Simeon's infringement claims, brought pursuant to

court declined to review SnoWizard's cross-appeal of this Court's denial of its motion for Rule 11 sanctions, noting that SnoWizard had reurged that motion in this Court at the time of oral argument on appeal.[26] It also reversed this Court on two points: (1) the applicability of the on-sale bar to the '871 patent;[27] and (2) whether Raggs and Special T were "in privity" with Southern Snow, Parasol, and Simeon.[28]

Addressing the on-sale bar, the court reasoned that: (1) the '871 patent was "the subject of a commercial offer for sale" based on the quotations SnoWizard's parts manufacturer sent to SnoWizard; (2) the invention was "ready for patenting" because SnoWizard produced detailed drawings of it, and its parts manufacturer "clearly understood [based on the drawings and SnoWizard's written instructions] how to make the parts and how the pieces were to be put together."[29] Therefore, the court concluded, the on-sale bar applied and rendered the '871 patent unenforceable.[30]

Addressing privity, the court reasoned that:

The question of privity as to Speical T and Raggs, which are distributors of products

---

15 U.S.C. § 1120 and related to the then-unregistered marks CAJUN RED HOT, CHAI LATTEA, COOKIE DOUGH, SWISS ALMOND COCO, TIRAMISU, ZEPHYR, and SNOBALLS were properly dismissed; (6) SnoWizard was not liable under federal or state antitrust law, because plaintiffs failed"failed to establish a dangerous probability of monopolization;" (7) Plaintiffs' RICO claims included no allegations of criminal activity, and therefore were properly dismissed. *Id.* at 953–64.

[26] *Id.* at 963–64.

[27] *Id.* at 948–53.

[28] *Id.* at 959–961.

[29] *Id.* at 952.

[30] *Id.* at 953.

made by Old Plaintiffs,[31] is of a different nature. The District Court found that Special T and Raggs are "in an express legal relationship with [Southern Snow, Parasol, and Simeon] by virtue of [their] distributorship."

As we have held in *Transclean*, with regard to questions of intellectual property infringement and invalidity, the person who buys an allegedly infringing product is not considered to be in privity with the person who sells him the product. As distributors, Raggs and Special T are persons who bought the allegedly infringing goods from the Old Plaintiffs, and, without more, cannot be considered "in privity" with the Old Plaintiffs."[32]

Based upon its finding of no privity, the court reinstated the following claims asserted by

Raggs and Special T against SnoWizard:

1.   Seeking a declaratory judgment that SnoWizard holds no valid or enforceable trademark rights in:

   a.   SNOSWEET (Count 27)
   b.   SNOFREE (Count 33)
   c.   MOUNTAIN MAPLE (Count 37)
   d.   CAJUN RED HOT (Count 41)
   e.   CHAI LATTEA (Count 42)
   f.   WHITE CHOCOLATE & CHIPS (Count 50)

2.   Seeking cancellation of SnoWizard's asserted Louisiana trademarks in:

   a.   CAJUN RED HOT (Count 54)
   b.   MOUNTAIN MAPLE (Count 68)
   c.   SNOFREE (Count 72)
   d.   SNOSWEET (Count 74)

3.   Seeking a Texas declaratory judgment that SnoWizard's purported trademark rights are invalid and unenforceable (Count 84).[33]

---

[31] *See Id.* at 959 ("As of April 18, 2011, Southern Snow, Parasol, and Simeon (collectively, 'Old Plaintiffs') were the only plaintiffs. The District Court dismissed numerous claims they brought against SnoWizard for asserting its trademark rights. On June 24, 2011, Snow Ingredients, Eisenmann, Raggs, and Special T (collectively, 'New Plaintiffs') became plaintiffs, also asserting claims based on SnoWizard's assertion of trademark rights.") (citations omitted).

[32] *Id.* at 960.

[33] *Id.* at 960–61; Civ. Action No. 06-9170, Rec. Doc. 412 at pp. 124–136.

The parties subsequently filed petitions for writs of *certiorari* with the United States Supreme Court.[34] These petitions were denied on February 23, 2015.[35]

### c.      Actions Taken on Remand

On remand, the Court: (1) dismissed without prejudice all pending post-trial motions;[36] (2) set briefing deadlines regarding the claims rendered valid by the Federal Circuit's order, and any motions the parties intended to re-urge;[37] and (3) reconsidered and lifted its permanent injunction, consistent with the Federal Circuit's order.[38] Consolidated Plaintiffs, in turn, moved to dismiss without prejudice the claims rendered valid on remand, representing, among other things, that "[n]one of the litigants, including the 3d-party insurer, want to re-litigate these remanded claims," and that dismissal without prejudice "will relieve the Court and all of the litigants of the burdens of a new trial."[39] The Court granted this motion, dismissing without prejudice the remanded claims.[40]

### 2.      This Litigation

### a.      Complaint

According to the Second Amended Complaint in this case, "Defendant SnoWizard is attempting to manipulate the snowball market through a scheme to assert exclusive monopoly rights

---

[34] United States Supreme Court Dockets Numbered 14-742 and 14-684.

[35] *Id.*

[36] Civ. Action No. 06-9170, Rec. Doc. 735.

[37] Civ. Action No. 06-9170, Rec. Doc. 738.

[38] Civ. Action No. 06-9170, Rec. Doc. 739.

[39] Civ. Action No. 06-9170, Rec. Doc. 740–1 at pp. 4–5.

[40] Civ. Action No. 06-9170, Rec. Doc. 742. On October 29, 2014, Defendants moved for attorney's fees. Rec. Doc. 741. That motion is still pending.

to sell products in that market, threatening and bringing litigation to force withdrawal of legitimate products and producers from the market based on fraudulently asserted and obtained patent and trademark rights."[41] Plaintiffs in this matter claim that SnoWizard's attorneys Kenneth Tolar and Jack Morris have conspired with SnoWizard and Sciortino to acquire, maintain, and enforce bogus patents and trademark registrations as a means of asserting unwarranted monopoly rights, through abusive litigation and obstruction of justice.[42]

In particular, Plaintiffs allege the following:

In what Plaintiffs identify in their Second Amended Complaint as "Count 1," they allege that SnoWizard, Sciortino, Tolar, and Morris engaged in a litigation scheme that constitutes obstruction of justice and a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq.*[43]

In "Count 2" and "Count 6," Plaintiffs allege that SnoWizard has engaged in sham litigation against Plaintiffs and made material misstatements in court and to the United States Patent and Trademark Office ("USPTO") in a manner that violates both federal and state antitrust laws.[44]

In "Counts 3–4," Plaintiffs accuse SnoWizard of violating the Lanham Act for their allegedly fraudulent trademark registration of WHITE CHOCOLATE & CHIPS and CAJUN RED HOT.[45]

In "Count 5," Plaintiffs raise another Lanham Act claim wherein they allege unfair

---

[41] Rec. Doc. 53 at p. 3.

[42] *Id.*

[43] *Id.* at p. 45.

[44] *Id.* at pp. 45–47; 49.

[45] *Id.* at p. 48.

competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).[46]

In "Count 7," Plaintiffs allege that SnoWizard has engaged in conduct that violates the Louisiana Unfair Trade Practices Act ('LUTPA"), Louisiana Revised Statute § 51:1401, *et seq.*[47]

In "Count 8" and "Count 11", Plaintiffs claim that, pursuant to Louisiana Civil Code Article 2315, SnoWizard must pay damages for fraud, obstruction of justice, and abusive litigation, and that Morris and Tolar conspired to commit those acts and are thus liable under Louisiana Civil Code Article 2324.[48]

In "Count 9," Plaintiffs accuse SnoWizard of malicious prosecution for pursuit of its claims in *Southern Snow Manufacturing Company, Inc. v. SnoWizard, Inc.*, Case No. 10-4275.[49]

In "Count 10", Plaintiffs raise a similar claim for SnoWizard's role in *SnoWizard, Inc. v. Doty, et al.*, Case No. 11-0515.[50]

Finally, in "Counts 11–13," Plaintiffs allege that Defendants Morris and Tolar are liable as conspirators for SnoWizard's alleged wrongdoing as set forth in "Counts 1–9."[51]

### b.      Dismissal

In its order on Defendants' "Motion to Dismiss Second Amended Complaint Under Rule 12(b)(6)," the Court dismissed all of Plaintiffs' claims. Specifically, the Court dismissed (1) "Counts

---

[46] *Id.*

[47] *Id.* at p. 49.

[48] *Id.* at pp. 49–50.

[49] *Id.* at p. 50.

[50] *Id.*

[51] *Id.*

1-8" against SnoWizard and Sciortino due to *res judicata*, (2) "Counts 9–10" and all claims against

Morris and Tolar ("Counts 11–13") because "Plaintiffs cannot show a bona fide termination on the

merits in the underlying lawsuits;" (3) "Count 1,"against Morris and Tolar, for "fail[ure] to allege

an underlying predicate RICO act to support the cause of action; (4) "Count 11" against Morris and

Tolar, because "Plaintiffs fail to allege any facts indicating that Morris and Tolar conspired to help

SnoWizard and Sciortino commit fraud or obstruction of justice;" and (5) "Counts 11 and 12",

against Morris and Tolar, since "neither of the lawsuits in question can be said to have terminated

in Plaintiffs' favor."[52]

## II. Parties' Arguments

### A.   *Plaintiffs' "Motion for Reconsideration"*[53]

#### 1.   Impact of *Lexmark* Decision

In support of the instant motion, Plaintiffs assert that the United States Supreme Court's

March 25, 2014 decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*[54] (1) "explicitly

controls the questions of interlocutory dismissal of Plaintiffs' § 1125(a) causes of action, in the 06-

9170 consolidated litigation . . . and in this litigation's Counts 5 & 7,"[55] (2) "implicitly controls the

questions of interlocutory dismissal of Plaintiffs' other Lanham-Act causes of action under § 38

(15 U.S.C. § 1120) in the . . . [C]onsolidated litigation . . . and in this litigation's Counts 3 & 4"

because "the Supreme Court's analysis of the statement of purpose in § 1127 applies to the entire

---

[52] Rec. Doc. 72 at p. 33.

[53] Rec. Doc. 76.

[54] 134 S.Ct. 1377 (2014).

[55] Rec. Doc. 76-1 at p. 1.

Lanham Act;"[56]  (3) "informs the question of interlocutory dismissal of the Civil-RICO causes of

action in the . . . [C]onsolidated litigation . . . and in this litigation's count 1;" and (4) "informs the

question of whether allegedly fraudulent applications for patents and trademarks constitute antitrust

violations and may serve as evidence of anti-competitive conduct in the . . . [C]onsolidated

litigation . . . and in this litigation's Counts 2 & 7."

### a.    Impact of *Lexmark* on Lanham Act Claims

Plaintiffs argue that *Lexmark* instructs that "the causes of action in the . . . [C]onsolidated

[C]ases should not have been dismissed on interlocutory order, and the causes of action here should

not have been dismissed on interlocutory order."[57] According to Plaintiffs, *Lexmark* involved

"essentially the same set-up as the instant litigation," in that the defendant in that case asserted an

unfair-competition counterclaim pursuant to §43(a) of the Lanham Act,[58] alleging that the plaintiff

told its customers that it "owned a patent and copyright," he defendant "infringed the patent and

copyright," and "therefore that [the plaintiff] was the official supplier, [the defendant] was an

infringer, and that customers ought to buy only from [the plaintiff] and not [the defendant]."[59]

Plaintiffs claim that the Court in *Lexmark* found that "persons whose injury was proximately caused

by the unlawful conduct" had standing to sue pursuant to the Lanham Act.[60] Quoting from the

opinion in *Lexmark*, plaintiffs claim that "the intervening step of consumer deception is not fatal to

---

[56] *Id.* at pp. 1–2.

[57] *Id.* at p. 2.

[58] 15 U.S.C. § 1125(a).

[59] *Id.* at p. 2.

[60] *Id.*

the showing of proximate causation required by the statute," and that "'a defendant who seeks to promote his own interests by telling a falsehood to or about the plaintiff or his product' may be said to have proximately caused the plaintiff's harm.'"[61]

> **b.    Impact of *Lexmark* on RICO and Antitrust Claims**

Plaintiffs assert that the *Lexmark* decision cites the United States Supreme Court's *Bridge v. Phoenix Bond & Indemnity Company* decision, which "mak[es] very clear that third-party reliance can be sufficient to state a claim for unfair competition and to state a claim for Civil-RICO."[62] According to Plaintiffs, "[t]he third party might be a group of people such as customers or potential customers . . . or the United States Patent and Trademark Office," as it was in "these cases."[63] Plaintiffs maintain that "the Supreme Court long ago identified that the Civil-RICO statutes were modeled on the Clayton Act, which provides a private right of action for antitrust," and the *Lexmark* opinion "re-states the relationship among antitrust, Civil-RICO, and unfair-competition causes of action," as well as "the same common injury-proximately-caused-by-defendant pleading requirement of all three causes of action."[64] Therefore, Plaintiffs assert, *Lexmark* informs "both the Civil-RICO and antitrust issues in this litigation."[65]

> **c.    Impact of *Lexmark* on *Res Judicata* Analysis**

Plaintiffs maintain that because *Lexmark* "controls the several questions of interlocutory

---

[61] *Id.* at p. 3.

[62] *Id.* (citing 553 U.S. 639 (2008)).

[63] *Id.*

[64] *Id.*

[65] *Id.*

dismissal of Lanham-Act causes of action by several different sections of the District Court, it seems certain that those interlocutory dismissals will be reversed" by the Federal Circuit in the appeal that was then pending before that court.[66] Likewise, Plaintiffs argue, *Lexmark*'s "analysis of *Bridge* seems . . . likely to support a reversal of the interlocutory dismissal of the Civil-RICO claims."[67] Therefore, Plaintiffs assert, "those issues" would no longer be *res judicata*.[68]

Plaintiffs contend that even when "leaving aside the . . . consolidated litigation and looking only at this case," *Lexmark* "controls the issues of interlocutory dismissal of Lanham-Act causes of action in this litigations's Counts 3, 4, 5, & 7, and informs the issues of interlocutory dismissal of the Civil-RICO cause of action in this litigations Count 1, and interlocutory dismissal of federal and state antitrust causes of action in this litigation's Counts 2 & 6."[69]

## B.   Defendants' Opposition

In opposition, Defendants note that the Court dismissed "Plaintiffs' self-styled 'Counts 1-8'" against Defendants SnoWizard and Sciortino "on the basis of *res judicata*" and "likewise" dismissed all claims against Defendants Morris and Tolar.[70] Further, Defendants aver, the Court dismissed Plaintiffs' RICO claim against Morris and Tolar because Plantiffs "failed to allege an underlying

---

[66] *Id.* at p. 4. As noted above, the Federal Circuit has since issued its order on appeal. *See Southern Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.*, 567 Fed. App'x 945 (2014). Contrary to Plaintiffs' expectations regarding *Lexmark*, the Federal Circuit's order does not address the decision.

[67] *Id.*

[68] *Id.*

[69] *Id.*

[70] Rec. Doc. 77 at p. 1.

14

predicate RICO act to support the cause of action."[71] According to Defendants, the Court's finding that Counts 1-8 "are barred by *res judicata*" is based on the judgment rendered upon the jury's verdict in the Consolidated litigation,[72] which was on appeal at the time the opposition was filed.[73]

### 1.    Impact of *Lexmark* on *Res Judicata* Analysis

Defendants assert that Plaintiffs "vastly overstate the significance of *Lexmark*," since *Lexmark* "says nothing about *res judicata* and has no bearing on this Court's dismissal of Counts 1-8 on that basis."[74] Defendants further contend that "*Lexmark* does not control any issue in this case or in the consolidated cases," because Consolidated Plaintiffs' false advertising claims failed for lack of supporting evidence in the Consolidated Cases, and failed due to *res judicata* in the present case.[75]

### 2.    Impact of *Lexmark* on RICO and Antitrust Claims

Additionally, Defendants argue, "*Lexmark* cannot possibly alter this Court's interlocutory dismissals of [P]laintiffs' alleged RICO claims under Rule 12(b)(6)," because the decision did not "alter the requirement of pleading 'a pattern of racketeering activity' consisting of 'two or more predicate criminal acts,'" which requirements Plaintiffs failed to meet, leading to the dismissal of those claims.[76] "For the same reason," Defendants contend, *Lexmark's* "brief mention of the Court's observations in *Bridge* . . . do not relieve a civil RICO plaintiff of the requirement of pleading a

---

[71] *Id.*

[72] *Id.* (citing Civ. Action No. 06-9170, Rec. Doc. 665)).

[73] *Id.* at p. 2.

[74] *Id.*

[75] *Id.* at pp. 3–4.

[76] *Id.* at p. 4.

'pattern of racketeering activity' consisting of 'two or more requisite criminal acts.'"[77]

Finally, Defendants contend, "*Lexmark* has nothing to do with 'the question of whether allegedly fraudulent applications for patents and trademarks constitute antitrust violations or may serve as evidence of anticompetitive conduct.'"[78] According to Defendants, *Lexmark* "expressly stated" that federal antitrust claims were not before it.[79] In the present case, Defendants argue, this Court held only that the "allegedly fraudulent applications for patents and trademarks do not constitute antitrust violations . . . as they are presented here," and therefore "may not serve as evidence of anti-competitive conduct" for purposes of Plaintiffs' antitrust claims.[80] "Otherwise," Defendants assert, "it was the jury which found as a fact that plaintiffs failed to establish the elements of their alleged antitrust claims at the trial on the merits."[81]

### C.    *Plaintiffs' Supplemental Memorandum*[82]

### 1.    Impact of *Lexmark* on *Res Judicata* Analysis

In a brief filed in further support of the instant motion after the Federal Circuit issued its decision on Plaintiffs' appeal, Plaintiffs initially argue that:

> The basic problem with this 12-1412 litigation and the preceding 06-9170 [C]onsolidated litigation is that many of the basic, Lanham-Act, unfair-competition claims in the first 3 cases were summarily dismissed by other sections of this Court during 2010 & 2011, at a time when the law was unclear and would not clarified

---

[77] *Id.*

[78] *Id.* at p. 5.

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] Rec. Doc. 78.

until 25 March 2014, and in the later stages of the litigation another section of this Court considered itself to be bound by many of the earlier summary decisions of other sections, during 2012 & 2012 when the law was unclear and would not be clarified until 25 March 2014.[83]

Plaintiffs contend that because the Court dismissed the "bulk of the claims" in the present case due to *res judicata*, the dismissal "is explicitly related and tied to the prior . . . [C]onsolidated litigation, including subsequent changes to the disposition and posture of [that] litigation, and subsequent changes or clarifications in the laws under which most of the many summary dismissals in [that] litigation were decided."[84]

Plaintiffs also assert that:

Even if the system does not ultimately acknowledge that *Lexmark Int'l* clearly shows the earliest Lanham-Act unfair-competition claims should not have been summarily dismissed before trial, *Lexmark* is nevertheless at least an intervening change in the controlling law, and should be considered in the *res judicata* issues here.[85]

According to Plaintiffs, *Lexmark* "makes perfectly clear that the dismissals of Lanham-Act unfair-competition claims by several sections of this Court in 2010-2013 would be improper."[86] Nonetheless, Plaintiffs note, the Federal Circuit "did not address *Lexmark,*" and "did not address the dismissal of most of the unfair-competition claims at all," and "did not address any of those issues upon a timely request for rehearing."[87] Therefore, Plaintiffs contend, even if the Plaintiffs in the Consolidated litigation may be "ultimately trapped by the circumstance that the Federal Circuit did

---

[83] *Id.* at p. 1. The *Lexmark* decision was issued on March 25, 2014.

[84] *Id.*

[85] *Id.* at p. 5.

[86] *Id.*

[87] *Id.*

not address or even acknowledge" the *Lexmark* decision, that decision is nonetheless "an intervening change in the law," and "must be considered in the instant issue of the application of *res judicata* to the claims in 12-1412."[88] Plaintiffs assert that it is "a vexed question" whether the Lanham Act claims dismissed in the consolidation "will ever be corrected,"  given that the Federal Circuit did not address the *Lexmark* opinion, but nonetheless contends that "it is a completely different question whether prior decisions made under old, overturned, changed law should be imposed on new claims in new lawsuits."[89]

### 2.    Impact of the Federal Circuit's Order on Plaintiffs' Lanham Act § 1120 Claims

Plaintiffs further maintain that "the dismissal of 12-1412 indirectly relies on an aspect of 06-9170 that has been overruled in appeal, creating at least a technical error in 12-1412," because:

> The parties Raggs Supply, LP and Special T Ice Co., Inc. are co-plaintiffs in both 11-1499 (c/w 06-9170) and 12-1412. In 06-9170 a number of their claims, including claims against WHITE CHOCOLATE & CHIPS, CAJUN RED HOT, and MOUNTAIN MAPLE were summarily dismissed on the grounds of privity, and the dismissals were reversed and remanded on appeal by the Federal Circuit, and were technically still pending as of the 27-MAR-2013 Order at issue here, and are technically still pending at the present date. Therefore no final determination of these specific claims as to these specific parties has ever been made, and there can be no *res-judicata* effect as to these specific parties in the subsequent 12-1412 lawsuit.[90]

Plaintiffs assert that the United States Court of Appeals for the Federal Circuit held in its decision regarding the Consolidated Cases that:

> SnoWizard's later, eventual successful registration of WHITE CHOCOLATE & CHIPS and CAJUN RED HOT could be sued upon by amendment or by filing a new lawsuit in spite of previous unripe claims against those marks being summarily

---

[88] *Id.*

[89] *Id.* at p. 6.

[90] *Id.*

dismissed.[91]

Plaintiffs maintain that they were "not allowed to fully challenge MOUNTAIN MAPLE and

SNOSWEET because of earlier summary judgments by another section of this Court," and were:

> [N]ot allowed to fully challenge CAJUN RED HOT AND WHITE CHOCOLATE
> & CHIPS because when SnoWizard finally obtained registration of those two marks
> . . . the Plaintiffs were not allowed to amend those occurrences into the
> [consolidated] litigation, and those 2 later-obtained marks got a presumption of
> validity because of the later-obtained registrations that the Plaintiffs were not
> allowed to fully challenge at trial in the [consolidated] litigation.[92]

Plaintiffs assert that although the Federal Circuit affirmed "the early, summary

dismissals . . . in the earlier consolidated cases," that court also held that "should the trademarks

become registered, the § 1120 appellants could have amended their pleadings or filed a new suit."[93]

Plaintiffs contend that they "move[d] to amend such later-ripening claims into the [Consolidated]

litigation, but were denied."[94] Further, Plaintiffs assert, some of the Plaintiffs "filed the later-ripening

claims as a new lawsuit—this lawsuit," but these claims "were dismissed as being duplicative of the

[Consolidated] litigation in which those claims were barred, dismissed, and not decided."[95]

According to Plaintiffs, the Court determined in the Consolidated litigation "that pleadings

under § 1120 require fully registered trademarks," leading to the dismissal of Plaintiffs' § 1120

claims regarding WHITE CHOCOLATE & CHIPS and CAJUN RED HOT as unripe, because they

had "not yet become registered," meaning that no determination of the merits of those claims was

---

[91] *Id.*

[92] *Id.* at p. 3.

[93] *Id.*

[94] *Id.*

[95] *Id.*

made in the consolidated litigation.[96]

Plaintiffs also contend that "[i]t is not properly controlling here for *res judicata* or collateral estoppel purposes that other issues regarding similar operative facts and transactions were determined in the trial of other causes of action in [the Consolidated litigation]," because the causes of action tried in the Consolidated litigation "had different pleading requirements . . . different requirements of proof and persuasion, and different requirements for discovery, evidence, and argument."[97]

According to Plaintiffs, the fact that WHITE CHOCOLATE & CHIPS and CAJUN RED HOT were registered during the present litigation, but were not registered during the Consolidated litigation, is a "critical, determinative difference between the operative facts in the claims in the 2 lawsuits," since the claims in the Consolidated litigation "were barred and dismissed as unripe explicitly because the marks were not fully registered."[98] Further, Plaintiffs maintain, the § 1120 claims at issue in this litigation "were not only distinct, but were attempted to be raised in the prior lawsuit, but were unripe, premature, barred, dismissed, and not determined in the prior lawsuit," precluding the prior lawsuit from being *res judicata* here.[99]

### 3.    "Holistic Reason to Reconsider"

Plaintiffs also advance a "holistic reason to reconsider dismissal"—specifically, that "misuse and abuse of intellectual property rights is unlawful and is actionable by competitors and

---

[96] *Id.*

[97] *Id.* at p. 4.

[98] *Id.*

[99] *Id.*

market-participants," and that this "truth was only finally established on 25 March 2014," by which time several Plaintiffs had already gone to trial.[100] Plaintiffs maintain that "it is clearly not right, not lawful, and not fair that  determinations made under the old law, and determinations effectively never made at all, should be deemed to be *res judicata* shortcut reasons to dismiss" the instant litigation.[101] Plaintiffs assert that the present litigation "really boils down to documents," most of which are "already public," a characteristic that makes the issues here "completely different" from those tried in the consolidated litigation.[102]

Plaintiffs also argue that "[i]f SnoWizard and its attorneys did not, in fact, make several material misrepresentations to the USPTO and to this Court and the Federal Circuit, on the public record, then the claims in [this case] can be very easily eliminated."[103] Indeed, Plaintiffs contend, if the present case "lacks substance, then it will be blown away on its own weaknesses."[104] Therefore, Plaintiffs assert, "[t]here is no need to pretend that the [Consolidated] litigation 'covered' these newly arising issues, or 'determined' them for *res judicata* purposes."[105]

---

[100] *Id.* at p. 7.

[101] *Id.*

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

**D.** *Defendants' Response and Supplemental Memorandum in Opposition*[106]

    **1.** **Impact of the Federal Circuit's Order on Plaintiffs' Lanham Act § 1120 Claims**

In further opposition to the instant motion, Defendants first assert that "the Judgment on Jury Verdict dated March 5, 2013, as affirmed on appeal, explicitly declares that 'SnoWizard, Inc. owns a valid and enforceable federally registered trademark in CAJUN RED HOT,' and 'SnoWizard, Inc. owns a valid and enforceable federally registered trademark in WHITE CHOCOLATE & CHIPS,'" which findings are "final and definitive," and therefore bar Plaintiffs from seeking to have these trademarks declared "invalid and unenforceable" under a § 1120 "fraudulent procurement" theory in the present litigation.[107]

Defendants further maintain that although Plaintiffs argue that "certain claims asserted by Raggs Supply and Special T Ice" and remanded by the Federal Circuit are "technically still pending at the present date,"  Plaintiffs asserted in the October 15, 2014 status conference in the Consolidated litigation that "Raggs Supply and Special T Ice have no desire to pursue the remanded claims," and subsequently moved to dismiss these claims without prejudice.[108] According to Defendants, if "Raggs Supply and Special T Ice have no desire to pursue the remanded claims" in the Consolidated litigation, "then it follows that they would have no desire to pursue the same claims in this suit," rendering the instant motion moot, to the extent that it seeks reconsideration of the dismissal of these claims.[109]

---

[106] Rec. Doc. 79.

[107] *Id.* at pp. 1–2.

[108] *Id.* at p. 3.

[109] *Id.*

### 2.       Impact of *Lexmark* on *Res Judicata* Analysis

Defendants also argue that it "is not the law" that intervening changes in the law must be considered in the *res judicata* analysis because, "[u]nder this reasoning, every change in the law would entitle the losing parties in prior litigation to file new lawsuits against the winning parties for the same causes of action under the new law."[110] Regardless, Defendants argue, *Lexmark* only held that the defendant counter-claimant was "entitled to a chance to prove its case," whereas Plaintiffs here "had many chances to prove their alleged false advertising claims, but simply produced no evidence to support them."[111]

### 3.       "Holistic" and "Alternative" Arguments for Reconsideration

Finally, Defendants argue that Plaintiffs' "holistic" argument that the present case "boils down to documents," and "alternative" argument that the present case "will be blown away on its own weaknesses" both suffer from the same problem: that Plaintiffs' allegations, "on their face, and even if accepted as true, fail to state a claim for relief."[112] Therefore, Defendants assert, this case was "'blown away on its own weaknesses' from its inception."[113]

### III. Law and Analysis

**A.**     *Legal Standard: Motion for Reconsideration*

In the present motion, Plaintiffs urge the Court to reconsider its prior Order dismissing its claims with prejudice. The Court has "considerable discretion" in deciding whether to grant a motion

---

[110] *Id.* at p. 2.

[111] *Id.* at p. 2.

[112] *Id.* at p. 4.

[113] *Id.*

for reconsideration, but must "strike the proper balance between two competing imperatives: (1) finality and (2) the need to render just decisions on the basis of all the facts."[114]

This Court's discretion is further bounded by the Fifth Circuit's instruction that reconsideration is "an extraordinary remedy that should be used sparingly,"[115] with relief being warranted only when the basis for relief is "clearly establish[ed].[116] A motion for reconsideration is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[117] Rather, in resolving a motion for reconsideration, this Court considers whether:

(1) The motion is necessary to "correct manifest errors of law;"[118]

(2) The movant presents "newly discovered" or "previously unavailable" evidence;[119]

(3) "The earlier decision is clearly erroneous and would work a manifest injustice,"[120] or

(4) "There has been an intervening change of law by a controlling authority"[121]

---

[114] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 355 (5th Cir. 1993).

[115] *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[116] *Schiller v. Phyisicans Resource Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

[117] *Templet,* 367 F.3d at 479.

[118] *Templet*, 367 F.3d at 479; *See also Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, No. 12-1026, 2014 WL 5429417 at *2 (E.D. La. Oct. 22, 2014) (Brown, J.).

[119] *Id. See also Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, No. 12-1026, 2014 WL 5429417 at *2 (E.D. La. Oct. 22, 2014) (Brown, J.).

[120] *Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, No. 12-1026, 2014 WL 5429417 at *2 (E.D. La. Oct. 22, 2014) (Brown, J.).

[121] *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012). *See also Nola Ventures, LLC v. Upshaw Ins. Agency, Inc.*, No. 12-1026, 2014 WL 5429417 at *2 (E.D. La. Oct. 22, 2014) (Brown, J.).

**B.**     ***Impact of* Lexmark**

The parties first dispute whether Plaintiffs are entitled to reconsideration due to the United State Supreme Court's decision in *Lexmark v. Static Control Components, Inc.*,[122] which was decided on March 25, 2014, two days before the Court issued its order on Defendants' motion to dismiss.[123]

Plaintiffs argue that the *Lexmark* decision "controls" the issue of whether Counts 3-7 should have been dismissed from the present action, and also "informs" the issues of whether the Court should have dismissed Counts 1, 2, and 6.[124]  Plaintiffs also contend that even though the Court dismissed these Counts from the present case due to *res judicata*, "[t]he doctrine of finality . . . does not require that the *res-judicata* effect of now-discredited law should be applied to new and pending cases."[125]

Defendants assert that *Lexmark* has no effect because, among other things: (1)"[s]o long as the judgment on the jury verdict in the consolidated cases remains in effect, it bars relitigation of the same claims in this civil action for all of the reasons set forth by this Court in its Order and Reasons;" and (2) the decision addressed pleading standards, whereas Plaintiffs here "had many chances to prove their alleged false advertising claims, but have produced no evidence to support

---

[122] 134 S.Ct. 1377 (2014).

[123] Rec. Doc. 72.

[124] Rec. Doc. 76–1 at p. 4.

[125] Rec. Doc. 78 at p. 6. Plaintiffs also note that although "[t]he Federal Circuit was properly notified of the Supreme-Court *Lexmark Int'l* decision by a timely and properly filed F.R.A.P. Rule-28(j) letter," that court "did not address" that decision, and "did not address the dismissal of most of the unfair-competition claims at all," and also "did not address any of those issues upon a timely request for rehearing." *Id.* at p. 5.

them."[126] Defendants further argue that it is "not the law" that "every change in the law . . . entitle[s] the losing parties in prior litigation to file new lawsuits against the winning parties for the same causes of action under the new law."[127]

### 1.    Decision

Before considering whether  the *Lexmark* decision supports reconsideration here, the Court will consider what issues that decision addressed. In *Lexmark*, the plaintiff, a manufacturer of printers and toner cartridges used in printers sued  the defendant, a manufacturer of components used to re-manufacture the plaintiff's cartridges, asserting claims of copyright infringement.[128] The defendant, in turn, filed a counterclaim against the plaintiff, alleging false advertising in violation of § 1125(a) of the Lanham Act.[129] Specifically, the defendant asserted that: (1) the plaintiff, through its "Prebate" program, in which customers purchased toner cartridges for a discounted price, "purposefully misle[d] end-users" to believe that they were "required to return" cartridges after a single use; (2) the plaintiff falsely advised "most of the companies in the toner cartridge remanufacturing business" that "it was illegal to sell refurbished Prebate cartridges and, in particular, that it was illegal to use [the defendant's] products to refurbish those cartridges;" and (3) the plaintiff's "misrepresentations had proximately caused and were likely to cause injury to it," and had "substantially injured its business reputation."[130]

---

[126] Rec. Doc. 77 at p. 3.

[127] Rec. Doc. 79 at p. 2.

[128] 134 S.Ct. at 1384.

[129] *Id.*

[130] *Id.*

The plaintiff moved to dismiss the defendant's counterclaim, and the district court granted the motion, holding that the defendants lacked "prudential standing" to assert a claim.[131] The United States Court of Appeals for the Sixth Circuit, in turn, reversed the dismissal, holding that the defendant:

> [H]ad standing because it alleged a cognizable interest in its business reputation and sales to remanufacturers and sufficiently alleged that th[o]se interests were harmed by [the plaintiff's] statements to the remanufacturers that [the defendant] was engaging in illegal conduct.[132]

The Supreme Court, granted certiorari "to decide the appropriate analytical framework for determining a party's standing to maintain an action for false advertising under the Lanham Act," an issue it deemed to be "a straightforward question of statutory interpretation."[133] In addressing the issue, the Court began by considering the language of the statute, which "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising."[134]

Construing that language, the Court first applied its interpretive presumption that "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked."[135] Specifically, the Court considered the "detailed statement of . . . purposes" included within the Lanham Act, holding that:

> To come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales. A consumer who is hoodwinked into purchasing a disappointing product may well have

---

[131] *Id.* at 1385.

[132] *Id.*

[133] *Id.* at 1387.

[134] *Id.*

[135] *Id.* (citations and internal quotation marks omitted).

an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act. Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the Act's aegis.[136]

Next, the Court applied the interpretive presumption that "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute,"[137] describing the proximate cause inquiry in part as follows:

> Proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits.
>
> [T]he proximate-cause requirement generally bars suits for alleged harm that is too remote from the defendant's unlawful conduct. That is ordinarily the case if the harm is purely derivative of misfortunes visited upon a third person by the defendant's acts.
>
> In a sense, of course, all commercial injuries from false advertising are derivative of those suffered by consumers who are deceived by the advertising; but since the Lanham Act authorizes suit only for commercial injuries, the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute. That is consistent with our recognition that under common-law principles, a plaintiff can be directly injured by a misrepresentation even where a third party, and not the plaintiff, . . . relied on it.[138]

Applying these proximate cause principles to the task of interpreting the statute before it, the Court held that:

> [A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff. That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff.[139]

---

[136] *Id.* at 1390 (citations omitted).

[137] *Id.*

[138] *Id.* at 1390–91 (citations and internal quotation marks omitted)

[139] *Id.* at 1391.

Finally, the Court applied these rules to the false advertising claims at issue in the case before it, holding that: (1) the defendant's "alleged injuries—lost sales and damage to its business reputation—are injuries to precisely the sorts of commercial interests the Act protects," and are therefore within the zone of interests protected by the statute; and (2) the defendant "also sufficiently alleged that its injuries were proximately caused by [the plaintiff's] misrepresentations," because it alleged that the plaintiff "disparaged its business and products by asserting that [its] business was illegal," notwithstanding the absence of direct competition between the plaintiff and the defendant, and because it alleged that it "designed, manufactured, and sold microchips that were necessary for, and had no other use than, refurbishing toner cartridges manufactured by the plaintiff."[140] Further, the Court held, the defendant's allegations presented no "discontinuity" between the alleged injury to the re-manufacturers that comprising the defendant's customer base and the alleged injury to the defendant, since it followed that a drop in the re-manufacturers' sales "more or less automatically" corresponded with a drop in the defendant's sales.[141] Therefore, the Court held, the defendant "alleged an adequate basis to proceed" under § 1125(a) of the Lanham Act, and was consequently "entitled to a chance to prove its case."[142]

## 2. Analysis

In *Lexmark*, the Supreme Court held, in brief, that a plaintiff asserting a claim for false advertising pursuant to § 1125 of the Lanham Act[143] must allege "an injury to a commercial interest

---

[140] *Id.* at 1393–94.

[141] *Id.* at 1394.

[142] *Id.* at 1395.

[143] 15 U.S.C. § 1125(a).

in sales or business reputation proximately caused by the defendant's misrepresentations."[144] The Court will now consider whether this holding merits reconsideration of the Court's prior Order dismissing claims asserted in Counts 1–7 of Plaintiffs' Second Amended Complaint.

### a.    Impact of *Lexmark* on *Res Judicata* Analysis

In its Order on Defendants' motion to dismiss, the Court found that Plaintiffs' Counts 1-8 were barred by *res judicata* to the extent that they were asserted against SnoWizard and Sciortino Specifically, the Court held, in part, that:

> All of Plaintiff's claims in "Counts 1–8" involve conduct by SnoWizard during the last decade purportedly intended to monopolize the snowball market, fraudulently obtain patents and trademarks, and unfairly compete against business rivals. The claims involve the same patents, trademarks, and alleged misstatements that were at issue in the Consolidated Cases, or are so sufficiently a part of SnoWizard's alleged plot to ruin competitors that Plaintiffs could have brought the claims in the Consolidated cases . . .
>
> [T]he claims are sufficiently identical to the claims in the previous matter that "the plaintiff bases the two actions on the same nucleus of operative facts," which precludes them. Other than the obstruction of justice allegation, there is nothing alleged in the Second Amended Complaint that was not adjudicated previously or is not precluded because it should have been adjudicated previously. Everything derives from the same set of facts. The facts alleged in the Second Amended Complaint are "related in time, space, origin, [and] motivation" and would have formed, and indeed already did form, the basis of a "convenient trial unit." Accordingly, "Counts 1–8" are precluded as to SnoWizard and Sciortino because all for elements of *res judicata* have been met: (1) the dispute involves the same parties in a prior lawsuit that (2) involved the same claims, (3) went to a final judgment on the merits, and (4) was rendered by a court of competent jurisdiction.[145]

### i.    Federal Circuit's Order

As an initial matter, the Court considers what effect, if any, the Federal Circuit's Order may

---

[144] *Id.*

[145] Rec. Doc. 72 at pp. 20–21.

have on the prior Order's *res judicata* findings. Addressing the relationship between appeals and *res judicata*, Wright and Miller observe that:

> Although preclusion is not affected by the fact that an appeal has been taken, the nature of the ultimate final judgment in a case ordinarily is controlled by the actual appellate disposition. If the appellate court terminates the case by final rulings as to some matters only, preclusion is limited to the matters actually resolved by the appellate court, whether it terminated the case on terms that left it unnecessary to resolve other matters or affirmed on some grounds and vacated or reversed on others. There is no preclusion as to the matters vacated or reversed, unless further proceedings on remand lead to a new judgment that expands the scope of preclusion.

Here, the Federal Circuit affirmed this Court's disposition of the RICO, Lanham Act, and Antitrust claims asserted in the Consolidated litigation,[146] but reinstated a number of state and federal declaratory judgment claims and Louisiana trademark claims asserted by "New" Plaintiffs Raggs and Special T, on the basis that these Plaintiffs were not in privity with the "Old" Plaintiffs in the Consolidated litigation.[147] The Federal Circuit also noted, in affirming the Court's interlocutory dismissal of "Old" Plaintiffs' claims under § 1120 of the Lanham Act, that "should the trademarks [at issue in those claims] become registered, the [Plaintiffs] could have amended their pleadings or filed a new suit."[148] Plaintiffs here assert claims under § 1120 of the Lanham Act in Counts 3 and 4. The Court will address both issues under separate headings. In all other respects relevant here, the Federal Circuit affirmed this Court, thereby leaving undisturbed the basis for the Court's preclusion analysis in its prior Order. The analysis below specifically considers the effect of *Lexmark,* if any, upon the preclusion analysis deriving from the Court's disposition of claims—apart from Plaintiffs' § 1120 claims, which will be addressed separately—that were

---

[146] *See* 567 Fed. App'x at 954–57; 961–964.

[147] *Id.* at 959–61.

[148] *Id.* at 959.

31

affirmed on appeal.

### ii.        Analysis

Plaintiffs argue that the Court should reconsider its dismissal of Counts 1–8 on the basis of

*res judicata*, because:

> [*Lexmark*] absolutely, directly, squarely, and completely addresses the issue of summary dismissal of Lanham-Act unfair-competition claims related to unfair assertion of intellectual property rights—exactly the issue upon which Judge Lemmon and Judge Zainey dismissed several of the Lanham-Act unfair-competition claims related to unfair assertion of intellectual property rights [in the consolidated litigation] and upon which this Court dismissed claims in 11-1499. The Supreme Court in *Lexmark Int'l* in 2014 makes perfectly clear that the dismissals of Lanham-Act unfair competition claims by several sections of this Court in 2010-2013 would be improper dismissals under the 2014 law of *Lexmark Int'l.*[149]

Plaintiffs further contend that reconsideration is appropriate here because:

> [A]n intervening change in the law under . . . cannot fairly be ignored in imposing *res-judicata* effects from the prior lawsuit decided under different, outdated, overruled law. If the new law provides any difference in the framework for determination of the prior lawsuit, then the point could not possibly have been litigated or raised in the prior lawsuit.[150]

Based upon these arguments, Plaintiffs appear to argue that if *Lexmark* had been decided

during the pendency of the Consolidated litigation, different claims may have been asserted in the

Consolidated litigation, and the outcome of the Consolidated litigation would have been different,

both of which possibilities merit consideration in the *res judicata* analysis here.[151]

As the Court noted in its prior Order, the *res judicata* analysis looks to whether: (1) the same

parties (or their privies) (2) have disputed the same claims, that previously (3) resulted in a final

---

[149] Rec. Doc. 78 at pp. 5–6.

[150] *Id.* at p. 5.

[151] *See* Rec. Doc. 72 at pp. 13–14 (citing *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013) (citations omitted)).

judgment on the merits (4) rendered by a court of competent jurisdiction.[152]

The "transactional test" is used to determine whether the claims in the present litigation are the "same," for *res judicata* purposes, as those asserted in the consolidated litigation.[153] Pursuant to the transactional test, the "critical question is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts."[154]

The *res judicata* analysis does not consider whether a preclusive judgment is consistent with legal standards in effect at the later point in time when *res judicata* is asserted. On this point, the United States Supreme Court's decision in *Federated Department Stores, Inc. v. Moitie*[155] is instructive. That decision states, in part, that:

> A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the *res judicata* consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. As this Court explained in *Baltimore S.S. Co. v. Phillips*, an "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of *res*

---

[152] *Id.*

[153] *Id.* at p. 17. In its prior order, the Court reasoned that,

Under [the transactional] test, the critical issue is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts. The rule is that *res judicata* bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated.

What factual grouping constitutes a "transaction," and what groupings constitute a "series" are to be determined pragmatically, giving weight to such considerations as where the facts are related in time, space, origin, or motivation, whether the[y] form a convenient trial unit, and whether their treatment conforms to the parties' expectations or business understanding or usage.

*Id.* (citing *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.,* 37 F.3d 193, 195 (5th Cir. 1994); *Petro-Hunt, LLC v. U.S.*, 365 F.3d 385, 396 (5th Cir. 2004)).

[154] *New York Life Ins. Co. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000) (citations omitted).

[155] 452 U.S. 394, 398–99 (1981) (citations omitted).

33

*judicata....* A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action]." We have observed that "[t]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of *res judicata* to avert."[156]

In keeping with the fundamental purposes of finality and certainty that the doctrine of *res judicata* exists to promote, and in accordance with controlling authority setting forth the legal standards that apply under the doctrine, this Court did not, and indeed must not, consider whether an otherwise preclusive prior judgment was "wrong or rest[s] on a legal principle subsequently overruled in another case."[157] Applying these rules here, the hypothetical impact that the *Lexmark* decision might have had upon the Consolidated litigation is irrelevant to the Court's *res judicata* inquiry. Even assuming that *Lexmark* establishes that the judgment issued in the consolidated litigation was "wrong," or was at least premised upon overruled legal authority, the preclusive effect

---

[156] *Id. Accord Murphy Oil*, 718 F.3d at 466 ("[T]he res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."). Wright and Miller frame the issue, in part, as follows:

> Judgments that rest on invalid judicial rules or assumptions of substantive law also should enjoy res judicata effect, again subject to the condition that a fair opportunity was afforded to challenge the rules applied. The fundamental proposition that res judicata is not defeated by showing that the judgment was wrong should not depend on the vehemence of the terms used to describe the error. It would have been unthinkable, for example, to undo all the diversity judgments based on federal common law after the pronouncement in *Erie Railroad v. Tompkins* that a century of settled practice had been "'an unconstitutional assumption of powers by the Courts of the United States.'" Putting emotive words aside, a pragmatic judgment can be made that, at least with the general quality of courts enjoyed in this country, a first litigation offers sufficient opportunity to contest the constitutionality, wisdom, or meaning of judicial rules of decision.

CHARLES A WRIGHT & ARTHUR R. MILLER *ET AL.* 18A FEDERAL PRACTICE & PROCEDURE § 4429 (2d Ed. 2014).

[157] *Moitie*, 452 U.S. at 398.

of that judgment would remain the same.[158] Therefore, insofar as Plaintiffs seek reconsideration on this basis, their motion lacks merit.

### b.   Effect of *Lexmark* on Claims Asserted Against Morris and Tolar

In its prior Order, the Court concluded that *res judicata* did not bar Plaintiffs' claims against Morris and Tolar, because Morris and Tolar "were not parties to the previous action."[159] Accordingly, the Court will now consider whether *Lexmark* warrants reconsideration of the portions of the Court's prior Order addressing claims asserted against these Defendants.

### i.   Effect of *Lexmark* on Count 1

Plaintiffs maintain that *Lexmark* is an "intervening change in the law,"[160] that "informs the question of interlocutory dismissal of the Civil-RICO cause of action in the [Consolidated] litigation and in this litigation's Count 1."[161] In its prior Order, the Court concluded that Plaintiffs' Count 1, as asserted against Morris and Tolar, should be dismissed for failure to state a claim upon which relief may be granted, because:

> Plaintiffs' allegations of orchestrating a litigation scheme, engaging in sham litigation, and making material misstatements in court, while extremely serious, are not the types of conduct that support obstruction of justice and a violation of RICO. The authority cited by both parties makes this clear. Thus, Plaintiffs have failed to allege a predicate act for a RICO claim.[162]

---

[158] Considering that the Federal Circuit did not address *Lexmark*, despite being informed of the decision during the pendency of appeal, it is far from clear whether the decision is the significant, controlling case Plaintiffs deem it to be. *See* Rec. Doc. 78 at p. 5. The Court addresses the decision as it relates to several of Plaintiffs' other claims below.

[159] Rec. Doc. 72 at p. 21.

[160] Rec. Doc. 78 at p. 5.

[161] Rec. Doc. 76–1 at p. 2.

[162] Rec. Doc. 72 at p. 26.

Based upon the Court's analysis of this point, it is not clear to the Court how the *Lexmark* decision could conceivably constitute an "intervening change in the law" capable of supporting reconsideration. The Supreme Court in *Lexmark* addressed the pleading standards applicable to Lanham Act claims, not RICO claims. Although the Court in *Lexmark* quoted *Bridge v. Phoenix Bond & Indemnity Company*, a RICO decision, in support of several principles of proximate causation,[163] it did not address what allegations must be made to satisfy RICO's predicate act requirement. The Court dismissed Plaintiffs' RICO claim against Morris and Tolar because the claim did not allege a predicate act, as is required to state a RICO claim. Therefore, it does not appear that *Lexmark* is an "intervening change in the controlling law[164] that warrants reconsideration of Plaintiffs' RICO claim.

### ii.    Effect of *Lexmark* on Counts 2–7

It their briefing in support of the instant motion, Plaintiffs appear to assert that *Lexmark* either "controls" or "informs" the Court's dismissal of Counts 2–7, as asserted against all parties. Although the Court has found that *Lexmark* does not provide a basis for reconsideration of claims dismissed on *res judicata* grounds, the Court dismissed Counts 2–8, to the extent these claims were asserted against Defendants Morris and Tolar, on a different basis. Specifically, the Court held that:

> Plaintiffs . . . have had three opportunities to properly plead these claims against Morris and Tolar. Despite this, Plaintiffs have failed to allege any facts indicating that Morris and Tolar participated in a conspiracy to further the alleged wrongdoing

---

[163] Specifically, the Court cited *Bridge* in support of the propositions that: (1) " plaintiff can be directly injured by a misrepresentation even where a third party, and not the plaintiff, ... relied on it;" (2) "a defendant who seeks to promote his own interests by telling a known falsehood to or about the plaintiff or his product may be said to have proximately caused the plaintiff's harm; and (3) in the "relatively unique circumstances" presented by the case, "the remanufacturers are not more immediate victim[s] than [the defendant]." 134 S.Ct. at 1391; 1394 (citing 533 U.S. 639 (2008)).

[164] *Demahy,* 702 F.3d at 182.

contained in "Counts 2–8." Accordingly, Plaintiffs' claims in "Counts 2–8" against Morris and Tolar must likewise be dismissed.[165]

The Court will therefore now consider whether *Lexmark* warrants reconsideration of the Court's dismissal of these Counts, as asserted against Morris and Tolar. As noted above, the Supreme Court held in *Lexmark* that "to invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations."[166] Here, the Court dismissed Counts 2–8, to the extent that these Counts alleged wrongdoing on the part of Morris and Tolar, because Plaintiffs had not alleged any facts suggesting that Morris and Tolar conspired to commit the wrongdoing alleged in those Counts. The Court did not dismiss Counts 2–8, as asserted against Morris and Tolar, for failure to allege a Lanham Act violation, much less for failure to allege the specific elements of a § 1125 violation, as was addressed in *Lexmark*. The *Lexmark* decision does not appear to address the sufficiency of conspiracy allegations in any sense. It is therefore not clear how *Lexmark* could either "control" or "inform" the Court's decision on this point, such that reconsideration would be warranted here. Consequently, Plaintiffs have not "clearly established"[167] that *Lexmark* is an "intervening change of law by a controlling authority"[168] that would make reconsideration appropriate here.

## C.    *Impact of the Federal Circuit's Order on Plaintiffs' Lanham Act §  1120 Claims*

Plaintiffs also assert that the Court should reconsider its dismissal of Counts 3 and 4 of the

---

[165] *Id.* at p. 21.

[166] 134 S.Ct. at 1395.

[167] *Schiller,* 342 F.3d at 567.

[168]  *Demahy,* 702 F.3d at 182.

instant litigation, which assert claims pursuant to 15 U.S.C. § 1120 arising from SnoWizard's

alleged fraudulent registration of the WHITE CHOCOLATE & CHIPS and CAJUN RED HOT

marks. According to Plaintiffs, reconsideration is warranted here because the Federal Circuit held

that "SnoWizard's . . . registration of WHITE CHOCOLATE & CHIPS and CAJUN RED HOT

could be sued upon by amendment or by filing a new lawsuit in spite of previous unripe claims

against those marks being summarily dismissed."[169]

As noted above, Plaintiffs' arguments on this point relate to claims asserted pursuant to

15 U.S.C. § 1120. That statute provides:

> Any person who shall procure registration in the Patent and Trademark Office of a
> mark by a false or fraudulent declaration or representation, oral or in writing, or by
> any false means, shall be liable in a civil action by any person injured thereby for any
> damages sustained in consequence thereof.

In its prior Order, the Court dismissed Counts 3 and 4 as barred due to *res judicata*.

Specifically, the Court held that:

> Despite Plaintiffs' repeated assertions that SnoWizard "fraudulently" obtained
> patents and trademarks, the jury rejected those claims. Specifically, the jury found
> that Sciortino did not make material misstatements to the USPTO; that SnoWizard
> did not fraudulently obtain its federal trademarks for WHITE CHOCOLATE &
> CHIPS . . . and that SnoWizard held a valid trademark to CAJUN RED HOT.
>
> Here, Plaintiffs resuscitate those very same claims. In "Counts 3–4," Plaintiffs allege
> that SnoWizard fraudulently obtained its trademarks for WHITE CHOCOLATE &
> CHIPS and CAJUN RED HOT in violation of 15 U.S.C. § 1120. As noted, however,
> the jury expressly found that (1) SnoWizard did not fraudulently obtain its WHITE
> CHOCOLATE & CHIPS trademark and (2) SnoWizard possesses a valid trademark
> to CAJUN RED HOT.[170]

The Federal Circuit affirmed this Court's dismissal of certain § 1120 claims asserted by

---

[169] Rec. Doc. 78 at p. 2.

[170] Rec. Doc. 72 at pp. 19–20.

Southern Snow, Parasol, and Simeon in the Consolidated litigation, reasoning, in part, as follows:

> Southern Snow, Parasol, and Simeon (collectively, the "§ 1120 Appellants")[171] brought multiple § 1120 claims against SnoWizard based on its prosecution of various marks. The District Court on Rule 12(b)(6) motion dismissed those claims that were predicated on the prosecution of CAJUN RED HOT, CHAI LATTEA, COOKIE DOUGH, SWISS ALMOND COCO, TIRAMISU, ZEPHYR, and SNOBALLS (a trade dress design for a concession trailer), which, at the time, had not yet been registered.
>
> The § 1120 Appellants challenge the dismissal, urging that the statute does not require actual registration. They argue that they were prejudiced because some of the marks became registered in the course of the litigation and because they "were left with no relief and nothing to effectively challenge those 2 registrations." . . .
>
> The § 1120 Appellants were not prejudiced when they were barred from asserting § 1120 claims based on SnoWizard's unregistered marks. SnoWizard may assert claims of infringement whether or not the underlying marks are registered. There is therefore no "consequence" arising from the applications themselves, even if the applications were fraudulently prosecuted in the USPTO. And should the trademarks become registered, the § 1120 Appellants could have amended their pleadings or filed a new suit.[172]

In light of this Order, Plaintiffs assert that the Court should reconsider its dismissal of "Counts 3–4" in this case, because "claims under 15 U.S.C. § 1120 for fraudulent procurement of a trademark registration are different and distinct from other trademark claims," and yet were "not determined in the prior lawsuit."[173] Plaintiffs maintain that claims related to the allegedly fraudulent registration of these marks were not determined in the prior lawsuit, because the Court did not allow

---

[171] As noted above, the Federal Circuit also refers to Southern Snow, Parasol, and Simeon as the "Old Plaintiffs" in its privity analysis. *See* 567 Fed. App'x at 959 ("As of April 18, 2011, Southern Snow, Parasol, and Simeon (collectively, 'Old Plaintiffs') were the only plaintiffs. The District Court dismissed numerous claims they brought against SnoWizard for asserting its trademark rights. On June 24, 2011, Snow Ingredients, Eisenmann, Raggs, and Special T (collectively, 'New Plaintiffs') became plaintiffs, also asserting claims based on SnoWizard's assertion of trademark rights.") (citations omitted).

[172] *Id.* at 958–59 (citations omitted).

[173] Rec. Doc. 78 at p. 4.

Plaintiffs to "amend such later-ripening claims into the [Consolidated] litigation."[174]

On this point, Plaintiffs cite no record entries from the Consolidated litigation regarding the denial or denials to which Plaintiffs refer, leaving to the Court the task of sifting through hundreds of record entries in cases handled by three sections of this Court over a period of eight years. Having searched the record, it appears that Plaintiffs may refer to a "Motion for Leave to Amend & Supplement Complaint in 11-1499, Alternative Motion to Dismiss Complaint in 11-1499 Without Prejudice"[175] which the Magistrate Judge denied on August 15, 2012.[176] In that motion, Plaintiffs sought leave to amend their complaint to allege, among other things, actual registration of the CAJUN RED HOT and WHITE CHOCOLATE & CHIPS marks.[177] Plaintiffs did not appeal the Magistrate Judge's Order denying leave to amend.[178]

Even if Plaintiffs were not able to litigate the issue of actual registration in the Consolidated Cases,  the "critical question" in determining whether a claim is the "same" for purposes of *res judicata* "is not the relief requested or the theory asserted but whether the plaintiff bases the two

---

[174] Rec. Doc. 78 at pp. 3–4. Plaintiffs contend that "the barred and dismissed § 1120 claims [in the Consolidated litigation] were dismissed as unripe because WHITE CHOCOLATE & CHIPS and CAJUN RED HOT had not yet become registered, only applied-for, as of 2010. No discovery was allowed on those claims. No evidence was allowed on those claims. No determination was made, and no determination could possibly have been made on the merits of those barred, unripe § 1120 claims in [the Consolidated litigation]." *Id.*

[175] Civ. Action No. 06-9170, Rec. Doc. 550.

[176] Civ. Action No. 06-9170, Rec. Doc. 553.

[177] Civ. Action No. 06-9170, Rec. Doc. 550-3 at pp. 78; 82.

[178] Subsequently, the Court administratively closed 11-0880, one of the consolidated cases, "pending resolution of the issues concerning trademarks in Civil Action No. 12-1412, specifically "CAJUN RED HOT" and "WHITE CHOCOLATE CHIPS." Civ. Action No. 06-9170, Rec. Doc. 563. The Court ultimately resolved those issues in the Order at issue in the present motion.

actions on the same nucleus of operative facts."[179] Applying this test to the allegations in Plaintiffs

Counts 3–4, the Court, in its prior Order, concluded that these Counts arose from the same nucleus

of operative facts at issue in the Consolidated litigation. The Court's conclusion on this point was

not a "manifest error of law"[180] sufficient to warrant reconsideration here. Plaintiffs asserted the

issue of fraudulent procurement in the Consolidated litigation, even after the August 17, 2010

dismissal of certain § 1120 claims discussed by the Federal Circuit.[181] Specifically, Plaintiffs'

"Amended Complaint in 11-499," filed on August 27, 2011, alleged, among other things, that: (1)

SnoWizard made "knowing, intentional, material misstatements which were made for the purpose

of obtaining a trademark registration that  SnoWizard was not entitled to" with respect to WHITE

CHOCOLATE & CHIPS, and that these statements "are a fraud upon the USPTO, being false

statements of material information;" and (2) that SnoWizard willfully made "false statements"

regarding CAJUN RED HOT to the USPTO which, if disclosed "would have resulted in

disallowance of registration."[182]

Extensive motion practice and a Consent Judgment[183] narrowed the range of claims

ultimately presented to the jury in the Consolidated litigation, but the issues of whether SnoWizard

owned  valid and enforceable trademarks in CAJUN RED HOT and WHITE CHOCOLATE &

CHIPS, and whether SnoWizard fraudulently obtained its WHITE CHOCOLATE & CHIPS

---

[179] *New York Life*, 203 F.3d at 387.

[180] *Templet*, 367 F.3d at 479.

[181] *See* 567 Fed. App'x at 958.

[182] Civ. Action No. 06-9170, Rec. Doc. 412 at pp. 67; 71.

[183] Rec. Doc. 652.

trademark, nonetheless were litigated to a verdict favoring SnoWizard.[184] Considering this procedural history, this Court did not manifestly err in concluding that Plaintiffs in the present litigation premised Counts 3 and 4 on "the same nucleus of operative facts"[185] asserted in the Consolidated litigation.

Even assuming that the jury's findings on either of these two points are insufficient to establish that claim preclusion bars Plaintiffs from asserting § 1120 causes of action in the present litigation, the jury's findings are sufficient to establish issue preclusion pursuant to the doctrine of collateral estoppel. The Fifth Circuit, quoting the RESTATEMENT (SECOND) OF JUDGMENTS, describes collateral estoppel as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.[186]

The Fifth Circuit further instructs that:

> Collateral estoppel is appropriate where four conditions are met: (i) The issue under consideration in a subsequent action must be identical to the issue litigated in a prior action; (ii) The issue must have been fully and vigorously litigated in the prior action; (iii) The issue must have been necessary to support the judgment in the prior case; and (iv) There must be no special circumstance that would render [estoppel] inappropriate or unfair. The fourth element, special circumstances rendering estoppel

---

[184] *See* Civ. Action No. 06-9170, Rec. Doc. 709–1 at p. 9 (Q: "Do you find by clear and convincing evidence that SnoWizard's federal registration of WHITE CHOCOLATE & CHIPS was obtained by fraudulent or material misstatements, made to the USPTO with intend to deceive in application for registration of WHITE CHOCOLATE & CHIPS?" A: "No" (8 votes)); *Id.* at p. 14 (Q: "Do you find by a preponderance of the evidence that SnoWizard owns a valid and enforceable trademark for the federally registered trademark 'CAJUN RED HOT?'" A: "Yes" (8 votes)); *Id.* at p. 15 (Q: "Do you find by a preponderance of the evidence that SnoWizard owns a valid and enforceable trademark for the federally registered trademark "WHITE CHOCOLATE & CHIPS?" A: "Yes" (8 votes). *See also* Rec. Doc. 72 at p. 20.

[185] *New York Life*, 203 F.3d at 387.

[186] *Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)).

unfair, applies only to the use of offensive (non-mutual) collateral estoppel by the plaintiff.[187]

Applying these rules to the present case, Plaintiffs in the Consolidated litigation asserted that SnoWizard fraudulently sought to procure the registration of the WHITE CHOCOLATE & CHIPS and CAJUN RED HOT marks, just like Plaintiffs assert in Counts 3 and 4 here. Further, the specific issue of fraudulent procurement of WHITE CHOCOLATE & CHIPS was litigated to a verdict in the Consolidated litigation, and the issues of whether SnoWizard held valid marks in WHITE CHOCOLATE & CHIPS and CAJUN RED HOT were also litigated to a verdict. Finally, these issues were necessary to support the Court's Judgment on Jury Verdict in the Consolidated litigation.[188] Therefore, the first three factors establishing collateral estoppel are present here, making the resolution of these issues conclusive upon Plaintiffs in the present case.

As to the fourth factor, which considers whether "special circumstances would render [estoppel] inappropriate or unfair" the Fifth Circuit instructs that "if a case involves mutual estoppel, i.e., where both parties were litigants in the prior action, 'an inquiry into special circumstances is unnecessary.'"[189] Each plaintiff here was a litigant in the prior litigation. Accordingly, it is not necessary to consider the fourth factor.

The jury's findings as to the WHITE CHOCOLATE & CHIPS mark expressly bar Plaintiffs from relitigating the issues of validity and fraudulent procurement in this case. Therefore, Plaintiffs

---

[187] *Id.* (citations and internal quotation marks omitted). In *Parklane Hosiery Co. v. Shore*, the United States Supreme Court noted that offensive, non-mutual collateral estoppel is at issue when a plaintiff "seek[s] to estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." 439 U.S. 322, 329 (1979)).

[188] Rec. Doc. 665 at pp. 5; 7–8.

[189] *Bradberry v. Jefferson County, Tex.*, 732 F.3d 540, 549 (5th Cir. 2013) (citations omitted).

cannot, as matter of law, establish an essential element of the § 1120 claim asserted in Count 3. The same is true for Plaintiffs' § 1120 allegations regarding CAJUN RED HOT, asserted in Count 4. Although the jury made no findings as to Defendants' fraudulent procurement of CAJUN RED HOT, litigation related to fraudulent procurement in this case would once again bring into question the validity of that mark, which issue was conclusively resolved by the jury in the Consolidated litigation, and is therefore now binding upon Plaintiffs in this litigation.

Plaintiffs are barred, either by operation of claim preclusion or issue preclusion, from challenging either the procurement or the validity of WHITE CHOCOLATE & CHIPS or CAJUN RED HOT. Accordingly, Plaintiffs have not "clearly established" that reconsideration of the Court's prior Order is warranted here.

## D.   *Effect of Federal Circuit's Reinstatement of Claims*

Finally, Plaintiffs argue that "the dismissal of 12-1412 indirectly relies on an aspect of 06-9170 that has been overruled on appeal, creating at least a technical error in 12-1412."[190] Specifically, Plaintiffs assert, Raggs Supply LP and Special T. Ice Co., Inc. "are co-plaintiffs" in the Consolidated litigation and this litigation, and "a number of their claims" in the consolidated litigation were "reversed and remanded on appeal," and "were technically still pending" at the time the Court issued its Order dismissing their claims in this case, and are "technically still pending" now.[191] Therefore, Plaintiffs argue, "there can be no *res judicata* effect as to these specific parties in the subsequent 12-1412 lawsuit."[192]

---

[190] Rec. Doc. 78 at p. 2.

[191] Rec. Doc. 78 at p. 6.

[192] *Id.* at p. 6.

In its Order, the Federal Circuit held that:

[T]he conclusion that Raggs and Special T are in privity with Old Plaintiffs "by virtue of the distributorship" is erroneous.  The District Court dismissed Counts 19–21, 24–27, 29–81, and 83–84 as duplicative. We reinstate only a portion of the dismissed claims, namely, Counts 27, 33, 37, 41, 42, 50, 54, 68, 72, 74, and 84.[193]

In light of this Order, the *res judicata* analysis in the Court's prior Order[194] no longer applies to Plaintiffs Raggs and Special T, to the extent that this analysis relied upon the Court's dismissal, on the basis of privity, of claims asserted by Plaintiffs Raggs and Special T in the Consolidated litigation.[195] Accordingly, the Court will reconsider and amend its prior Order to the extent required to conform with the Federal Circuit's order.

However, in the Consolidated litigation, Plaintiffs moved to dismiss all of the remanded claims without prejudice, representing, in part, that "[n]one of the litigants, including the 3d-party insurer, want to relitigate these remanded claims."[196] The Court granted Plaintiffs' motion, dismissing without prejudice the claims remanded in the Consolidated litigation.[197]  Therefore, the Court must assume, because Plaintiffs dismissed the remanded claims without prejudice, that they intend to pursue the remanded claims here.  Although Defendants assert that the issue is moot, because of the dismissal in the consolidated matter, they do not argue that Raggs and Special T are barred from asserting these claims here.

Therefore, the Court reconsiders its prior Order dismissing claims asserted by Raggs and

---

[193] 567 Fed. App'x at 960.

[194] Rec. Doc. 72.

[195] *See* 06-9170, Rec. Doc. 621, 927 F.Supp.2d 527 (E.D. La. 2013).

[196] Rec. Doc. 740–1 at p. 4.

[197] Rec. Doc. 742.

Special T in light of the Federal Circuit's decision. The Court has not undertaken an analysis at this point to determine whether the claims asserted by Raggs and Special T are barred by claim or issue preclusion, because that issue is not currently before the Court. The Court merely reconsiders and amends its prior Order dismissing claims asserted by Raggs and Special T to the extent required by the Federal Circuit's Order. Accordingly, unless Raggs and Special T notify the Court otherwise, the Court will proceed with these claims.

### IV. Conclusion

In the present motion, Plaintiffs contend that the United States Supreme Court's *Lexmark* decision is an intervening change in the law that "controls" or "informs" the claims dismissed by this Court in its prior Order. To the extent that Plaintiffs' arguments on this point are addressed to the Court's dismissal of Counts 1–8 based upon *res judicata*, Plaintiffs' arguments are unavailing, because the applicable *res judicata* analysis does not account for intervening changes in the law governing the preclusive claims. Further, to the extent that Plaintiffs' arguments on this point are addressed to the Court's dismissal of Counts 1–8 for failure to state a claim upon which relief may be granted, those arguments also fail, because *Lexmark* does not appear to address allegations of conspiracy, or the requirement that RICO plaintiffs allege a predicate criminal act. Therefore, Plaintiffs' arguments related to the *Lexmark* decision do not clearly establish that reconsideration is warranted here.

Plaintiffs also assert that the Court should reconsider its dismissal of Counts 3 and 4, which assert claims pursuant to 15 U.S.C. § 1120, because § 1120 claims were dismissed as unripe and not litigated in the Consolidated litigation. This argument, too, is unavailing, because Plaintiffs in fact did litigate the issue of fraudulent trademark applications in the Consolidated litigation. This

litigation culminated in jury verdicts for SnoWizard, rendering Plaintiffs unable to litigate essential elements of their § 1120 claims here, by operation of the doctrines of claim preclusion or issue preclusion.

Finally, Plaintiffs argue that the Federal Circuit's Order, in remanding certain claims asserted by Raggs and Special T in the Consolidated litigation, renders invalid this Court's dismissal of claims asserted by those Plaintiffs in this litigation. To the extent that Plaintiffs assert that the Federal Circuit's remand requires that the Court amend its preclusion analysis in the present case, Plaintiffs are correct, insofar as the Court's prior Order relied upon a finding of privity between Raggs, Special T, and the other plaintiffs in the Consolidated litigation. Therefore, unless the Court is notified otherwise by Raggs and Special T, the claims asserted by Raggs and Special T are revived here, based upon the Federal Circuit's decision. Accordingly,

**IT IS ORDERED** that Plaintiffs' "Motion for Reconsideration Under Rule 59"[198] is **DENIED IN PART AND GRANTED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiffs' "Motion for Reconsideration Under Rule 59"[199] is **GRANTED** to the extent that it urges the Court to reconsider and modify the *res judicata* conclusions in the prior Order[200] so that these conclusions are consistent with the Federal Circuit's holding that Raggs and Special T were not in privity with Plaintiffs in the Consolidated litigation.

**IT IS FURTHER ORDERED** that Plaintiffs are to notify the Court by Tuesday, April 14, 2015 if Raggs and Special T intend to pursue their claims in this litigation. If Plaintiffs do not

---

[198] Rec. Doc. 76.

[199] Rec. Doc. 76.

[200] Rec. Doc. 72.

respond by that date, the Court will assume that Defendants are correct, and the issue is moot. If Plaintiffs assert that they do intend to pursue claims, and Defendants believe they are precluded, Defendants are to file responsive briefing by Tuesday, April 21, 2015.

**IT IS FURTHER ORDERED**  that Plaintiffs' "Motion for Reconsideration Under Rule 59"[201] is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA**, this ___31st___ day of March, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[201] Rec. Doc. 76.